JOHN G. STEVENS, Appellant, *vs.* E. A. C. HATCH, *et als,* Respondents.

Where a party executes and acknowledges a deed, and afterwards, either by acts or words, expresses his will, that the same is for the use of the grantee, especially where the assent of the grantee appears to the transaction, it shall be sufficient to convey the estate. And this, even though the deed remains in the hands of the grantor.

No particular form is necessary in order to constitute a good delivery of a deed. This may consist in an act without words, or in words without any act. The main thing which the law requires, is that the mind of the parties should be manifest, the one to deliver, the other to accept the instrument.

(The facts are stated in the opinion of the Court.)

Points and Authorities of Appellant.

I.—The controversy grows out of the 20-acre tract claimed by the Respondent, C. C. B. Hatch, who insists that she holds the same discharged from the mortgage of the Appellant. The presumption raised by the deeds themselves is against the Respondent's title, and the burden of proof is on them to establish their title, and overcome this presumption.

II.—The Respondents have no equities as innocent purchasers for value, and do not claim as such. They got title through Newton, in March, 1858. An examination of the records at that time disclosed, *prima facie,* a perfect lien on the twenty acres by our mortgage.

There was the first deed from Becker to Newton, recorded November, 1855. Then the second deed, correcting the first, dated and acknowledged May 10, 1856, and recorded May 13, 1857, at 8 o'clock A.M. Then the mortgage from Newton to the Appellant, dated and acknowledged May 9, 1857, and recorded May 13, 1857, at eleven o'clock, A.M. Presumptively, the second deed, correcting the first, was delivered at its date, May 10, 1856, a year and a day before the mortgage was executed. No recording was necessary to perfect these conveyances; but the deed was actually recorded three hours before the mortgage.

At best, then, the Respondents stand in Newton's shoes; for if they bought, relying on the records for title, those records, on their face, showed that no title could pass, but subject to our mortgage. If they bought with knowledge of the facts stated in Becker's testimony, intending to hold the land discharged from the mortgage, they became purchasers in anything but good faith. The fair presumption is, that they bought relying on the covenants of warranty in their deed, under which Newton will have to save them harmless from the prior lien.

III.—The second deed, from Becker to Newton, correcting the first, was duly made, executed and *delivered*, and thereupon vested the fee in Newton; and the depositing the deed in the safe of Hollinshead & Becker, as explained by the circumstances, and by the correspondence between Becker & Newton, fixes the *time* of the delivery.

The deed became, by the consent of both parties, perfect and effectual in every way to pass the estate. The exact time when the estate passed is not very material, but it cannot be later than the date of Newton's letter, where he assents to the manner in which Becker had executed and delivered the deed, August 29, 1856.

Look at the facts, and see what it was the parties sought to accomplish. Newton, then living in Superior, had discovered the error in his deed. He writes to Becker, telling him to correct the error and perfect his title. Becker instantly proceeds to comply with the request, he residing in St. Paul. He makes the deed, signs, seals and acknowledges it, and makes the only practicable delivery, at least such a one as he believes Mr. Newton will approve. Newton is not here to take the deed himself, and he does not care to entrust it to the chances of a mail through the wilderness to Superior. He does not record it, because the record is not necessary to make the conveyance valid, and Mr. Newton has not directed him to record it. He puts it into the safe of Hollinshead & Becker, so that Mr. Newton can have the benefit of the deed " to guard against accidents to him," in the language of his letter, and thereupon writes to Newton the manner in which he had complied with his request, and executed and delivered

the deed.   Mr. Newton, in reply, assents thereto, and is satisfied with the manner in which Becker had thought proper to deliver the deed.   The deed is thus made, executed and delivered by the consent of both parties, and, in accordance with their mutual consent, deposited for safe keeping in the safe of the law firm of Hollinshead & Becker, neither party contemplating that any other act or thing whatever was necessary; and can it be that the title still remains in Becker? It is conceded the record of a deed is in no way necessary to pass the title, or of any use whatever, except to protect the grantee from the fraud or mistake of the grantor.   Suppose, then, that Becker, instead of putting the deed in the safe, had put it on record, and then written to Newton, who assented thereto.   The authorities all concur that such would have been an effectual delivery.   Now, as the record of the deed amounts to nothing, as regards the passing of the estate between the parties, how is the delivery any less effectual when everything is done but the recording?   Becker has done everything necessary to make a perfect conveyance, except a single act, wholly immaterial as it affects the grant, and still the grant is not perfect until the immaterial act is consummated.   Such is not the logic of the law, though it is the logic of the Respondents' case.   Again, nothing less than an actual delivery of the deed is consistent with the language of the parties.

The plain intent of the language of Becker's letter, that he had put the deed in the safe, " to guard against accidents to him," is this : In case of Becker's death, without any further act whatever, the land will not go to his heirs, nor will Newton have to look to them for a correction of the deed; the deed correcting the title will be found in the safe where it has been deposited for safe keeping.   Had Becker died while the deed was in the safe, under the circumstances, and before Newton came down and recorded the deed, would the estate have gone to Becker's heir, against the express language and understanding of the parties ?   Or would a judgment against Becker have intercepted Newton's title?   On the theory of the Respondents' case, both these queries are to be answered in the affirmative.   We think to answer them does violence

to the plain intent and understanding of both parties, to common sense, and to the law of the case.

There is nothing mysterious in the delivery of a deed, and it can be accomplished in ways as numerous and varied as are the transactions of men. *Coke on Littleton,* 36 " *a;*" see *Shep., Touch.,* 57. In the first case, the delivery is without words, by act only ; in the second case the delivery is by words without deeds. Can it make any difference that the words are spoken by letter, and is not the presumption of delivery stronger where the transaction is by letter, and the grantee absent, so that *words only* can be used to make good the delivery. 2 *Hilliard,* 295; *Doe, dem. Garnous vs. Knight,* 5 *Barnwell & Cress.,* 671; *Barlow vs. Heneage, Pre. Cha.,* 211 ; *Clavering vs. Clavering* 2 *Vern.,* 473; *Naldred vs. Gilham,* 1 *Pr. Williams,* 577; *Boughton vs. Boughton,* 1 *Atkins,* 625; *Shelton's case (Cro. Eliz.,* 7), cited in the case of *Souverbye vs. Arden,* 1 *John. Ch.* 240; *Schrugham vs. Wood,* 15 *Wend.,* 545; *Folley vs. Vantuyl,* 4 *Halst., Rep.* 153; *Farrer vs. Bridges,* 5 *Humphreys, (Tenn.)* 412·

IV.—It is not pretended that any conditions were to be performed before the delivery could be complete, and the deed was no escrow ; for,

1. It was delivered to no third party.

2. It was delivered with no conditions whatever to be performed.

3. No conditions or things whatever were ever performed, and still it is conceded that Newton afterwards got the title.

V.—Conceding, for the purpose of the argument, that the deed was not delivered at the time when we contend it was delivered, still the presumption is fair on the case as it stands, that Newton actually received the deed into his possession before he made our mortgage, the 9th of May, 1857. The whole burden of proof is on the defence.

VI.—The after acquired title of Newton would enure to the benefit of the Appellant, his mortgagor.

The mortgage had no express covenant, but it purported to grant and convey the premises to the Appellant, and a man

cannot claim in opposition to his own deed. "A grantor (and, of course, those claiming under him,) in a deed is estopped to deny his grant and his title to the estate conveyed." *Jackson vs. Murray*, 12 *John.*, 201; *Barber vs. Harris*, 15 *Wend.*, 615; *Brown vs. McCormick*, 6 *Watts*, 60; *McWilliams vs. Nesly*, 2 *S. & R.*, 507; *Somes vs. Skinner*, 3 *Pick.* 52; *White vs. Patten*, 24 *Pick.*, 324.

The case of *Van Renssellaer vs. Kerney*, 11 *How.*, 297, was carefully considered, and will fully support the estoppel in this case. See, also, 2 *Cowper*, (*Com. Law*,) 597.

Points and Authorities of Respondents.

The right of the Plaintiff to subject to the payment of his debt the portion of the mortgaged premises claimed by Hatch, depends upon the question, whether Becker's second deed to Newton (which is Newton's and his assign's only title to it,) was delivered prior to Hatch's purchase.

There can be no dispute about the legal proposition that a deed takes effect only from the date of its delivery. It is well settled that until delivered it has no operation—it is no deed. But questions often arise, and do in this case, as to what constitutes or amounts to a delivery.

In the case of *Maynard vs. Maynard el al.*, 10 *Mass.*, 455, the deed was left with the scrivener, with directions to get it recorded, which was done. *Held*, no delivery. In the case now before this Court, there was no recording, nor any act which passed the deed from Becker's exclusive possession and control—it was not left with a third party. His informing Newton that he had made it out, did not give the latter any control of it, or prevent Becker from destroying it the next moment, or refusing to give it up to Newton.

In the case of *Hatch vs. Haskins*, 17 *Maine*, (5 *Shepley*,) 391, it was held, that if a deed be found in the hands of the grantor, the presumption arises that no delivery had been made.

In the case of *Jones vs. Jones*, 6 *Conn.*, 111, Hosmer, C. J., says : " As the deeds were never delivered, but were retained by the grantor in his own possession, the putting them into

the custody of the Town Clerk for record, must be laid out of the question.   It was no delivery of them.".

That case is not so strong as the one before this Court.   Because, in that there was no claim, as in this, by another purchaser ; and in this case not any third person, not even the recording officer, was invested with any custody whatever, however slight or qualified ; but Becker retained the whole exclusive, absolute, unqualified possession, control and custody.   See also, *Hale & Wife vs. Hills*, 8 *Conn.*, 39, and *Stillwell vs. Hubbard*, 20 *Wendell*, 44.

In *Moore vs. Collins*, 4 *Dev.*, 384, (cited in note to *Maynard vs. Maynard*, 10 *Mass.*, 458,) the grantor said to the attesting witness, " I acknowledge that to be my act and deed."   Yet held to be no delivery.

The attention of the Court is called to all the cases cited in the note to *Maynard vs. Maynard*, from which we think it will clearly appear, that while there might be doubt, if the question were to be decided upon the authority of the English cases, the American cases remove that doubt, for they are all on our side ; and certainly in this country, where the American authorities are uniform, they are to be followed, rather than opposing English authorities.

It is true in this case, that it was Becker's intention to have included this land in his first deed to Newton, but equally true he did not do it, and that Hatch had no knowledge or even constructive notice of such intention.   Therefore no equity arises against him by reason of such intention.

It is also true that Becker made the second deed to cover the former mistake, and it was commendable in him to do so ; and it is true that it was his intention to make a good and sufficient actual delivery of it to Newton, and then perfect the title, so soon as he might have an opportunity to do so, and that he duly informed Mr. Newton of this state of his mind and will.   But it is equally true that of all this Hatch was ignorant, and had no notice, constructive or otherwise, and became a *bona fide* purchaser, without notice of any equity against him, before Becker had this opportunity to carry out his well-meant intentions.

Information to Hatch of what he intended to do, might

have answered in equity the same purpose as doing it, but information to Newton alone amounted to nothing. There is often a broad distinction in both law and fact between doing a thing, and informing a person, by letter, of your readiness, willingness and intention to do it at some future time, as opportunity may afford.

We make these observations because we suppose the whole case of the Plaintiff rests upon Becker's letter, and that his simple act of making out a deed, if he had gone no further in the matter, would not be claimed as a delivery, or to affect any rights of property.

Now, all he did in addition, was to simply inform one person, (Newton) of this act. It was not any new or distinct act, but an announcement of the performance of the act of making the deed, and did not add anything to the legal effect of that act; certainly not as against Hatch, who had no notice of it.

The reason and analogies of the law sustain our position. In all other matters, when the question of legal right turns upon the fact of a delivery, it would be held absurd to claim that a man had made a delivery of a thing if he had never, for one second, parted with the exclusive control over it, and could destroy it at his pleasure, or refuse to part with its possession. We do not say that a promissory note, a sum of money, a load of grain, or a cargo of lumber has been delivered to one who has never seen it in person or by agent, and can neither see it, possess it, or exercise any act of ownership, control, or custody over it without some further or new act of some person, who, whatever may have been his expressed intentions, may, nevertheless, refuse to allow such custody, and who may legally, and without trespass, beat off the claimant, and even destroy the thing itself.

To constitute a delivery of a deed, the grantor must part with the control, and the grantee must come into the control of it.

In the case of a deed delivered in escrow, the grantor parts with the control, but it does not take effect until it comes into the control of the grantee.

It takes two parties to make a good delivery. There must

be an acceptance, and there is no evidence of any by Newton. As to whether a deed without warranty conveys an after acquired title, see *Rawle on Covenants* for title, 441, &c., and the cases there cited.

Geo. L. & E. A. Otis, Counsel for Appellants.

Masterson & Simons, Counsel for Respondents.

*By the Court*—Atwater, J.—This was an action brought by the Appellant, Stevens, to foreclose a mortgage made and executed by Newton, one of the Defendants, May 9th, 1857. Judgment was taken by default, against all the Defendants except Hatch and wife, who answered, alleging that C. C. B. Hatch was seized in fee simple, and in possession of twenty acres of the premises mortgaged, and that she acquired title thereto through a deed of conveyance made by Defendant Newton to said C. C. B. Hatch, made and delivered March 1, 1858, recorded May 10, 1858, in Ramsey County, and that at the time of the execution of the mortgage set forth in the complaint, the said Newton had not any title to the premises claimed by Defendants, and that the title of Newton was acquired subsequent to the execution of the mortgage to the Plaintiff.

These allegations were denied by the reply.

A jury trial was waived and the cause was tried by the Court. The whole evidence submitted in connection with the pleadings, was the deposition of Geo. L. Becker, Esq., on the part of the Defendants, which was read without objection and by consent. The facts may be stated as briefly as in any other manner, by quoting the material parts of this deposition, which are as follows :

" On the 23d of July, 1856, Newton wrote to me that a deed I had made to him the October previous, contained an erroneous description of the land intended to be conveyed. I had sold him a strip of land 160 rods by 20 rods, off the north side of the north half of the southeast quarter of Section 10, T. 28, R. 23. In the deed, which was dated October 23, 1855, I had described the land as a part of the

S. W. quarter of said section 10, and on July 23, 1856, he wrote to me calling my attention to the description, and asking me to correct it.   I replied to him under date of July 31, 1856, by stating that I had made out a deed for a strip of land from north side of north half of southeast quarter, &c., a copy of which letter is hereto annexed as Exhibit A, and received as original.   Under date of August 29, 1856, Mr. Newton replied, that it was all right as I wished to do.   The reply is Exhibit B, received by consent as the original.   The deed lay in the safe of Hollinshead & Becker until I saw Mr. Newton in the spring following.   He informed me then that he had made a loan on the property to Mr. John G. Stevens, and desired me to make to Mr. Stevens a statement of the condition of the property, which I did, under date of May 12, 1857, hereto annexed, marked as Exhibit C.   I do not know whether I delivered the deed to Newton for record, or recorded it myself.   I think the letter to Stevens was written the 12th, as dated, and retained until after the mortgage was recorded."

The material portions of Exhibits A and B above referred to are as follows, the first being the letter of Mr. Becker to Mr. Newton of July 31, 1856 :

" * * * I have made out a deed to you rectifying the mistake in my former one, for land on the reserve, as I before wrote you.   I need no deed from you.   This deed from myself and wife to you, is in our safe to guard against accidents to me, but I would rather not record it until I see you again in St. Paul, and we can both see for ourselves that all is right. However I will do as you desire in the matter."

The next is the letter of Mr. Newton in reply to the foregoing, dated Superior, August 29, 1856, as follows :

" Yours of July 31st received, in relation to your deed to myself of Reserve lands.   It is all right as you wish to do." (The balance of the letter relating to other matters.)

Then follows a letter from Mr. Becker to the Plaintiff, giving a statement of the title to the mortgaged premises, (including the tract in dispute,) which the writer concludes is satisfactory.   This letter is dated May 12, 1857, but retained, as Mr. Becker states in his testimony, until the mortgage was

recorded.  Then follows the deed from Becker and wife to Newton, dated October 23, 1855, filed for record November 25, 1855.  Also the deed of Becker and wife dated May 10, 1856, to Newton, recorded May 13, 1857, at 8 o'clock A. M., and which states that the same was given to correct an error in the deed of October 23d, 1855.  The mortgage from Newton to Stevens was recorded May 13th, 1857, at eleven o'clock A. M.

As conclusions of fact, the Court found, "that at the time of the execution and delivery of the said mortgage as aforesaid, the said last named deed from the said Becker and wife to the said Newton, had not been delivered to the said Newton, but had remained, and was in the safe aforesaid, and in the custody and control of the said Becker, that said deed was first delivered on the 13th day of May, 1857, when the same was filed for record as aforesaid."  And as conclusions of law, *inter alia*, the Court held "that said Newton had no title to the said twenty acres at the time of the execution and delivery of the said mortgage to the Plaintiff; that the acquisition of the title to said twenty acres after the said mortgage was executed by virtue of the said second deed from the said Becker and wife to said Newton, did not enure to the benefit of the said Plaintiff as against the Defendants Hatch and wife, and that the said mortgage is not a valid and subsisting lien upon the said twenty acres," &c. And the said twenty acres were adjudged to be the property of Charlotte C. B. Hatch.  From which judgment the Plaintiff appeals to this Court.

Before passing to an examination of the main question presented by the facts above disclosed, it may be proper to remark, that the Respondents have no equities as innocent purchasers for a valuable consideration as against the Appellant.  Their deed from Newton was made and delivered March 1, 1858.  An examination of the records would have disclosed the fact, that Newton acquired this property May 10, 1856, as in the absence of any evidence to the contrary, that is presumptively the time of the delivery of the deed. And the same deed disclosed the fact, that he was in equity the owner of the premises, from October 23, 1855.  The deed

from Becker to Newton was in fact recorded, before the mortgage from Newton to Stevens. Here were circumstances amply sufficient to put Respondents on inquiry, and if they purchased with full knowledge of all the facts disclosed upon the trial, their claim must be regarded as solely of a legal nature, unsupported by equities.

The important question presented by the case is, whether there was a delivery of the deed from Becker to Newton, of May 10, 1856, before the execution and delivery of the mortgage from Newton to the Plaintiff. From a careful ex- ination of the facts proved, and the authorities applicable, I think there was a good delivery of this deed, previous to the execution and delivery of the mortgage. It will be observed that this was not an original sale of the premises, but a cor- rection of a previous deed. Newton was already the equi- table owner of the premises, and the sole object of the deed was to correct an error, and vest the legal title in Newton, to which he was rightfully entitled. This fact is not wholly un- important, in the circumstances, in determining the intent of the parties as to the disposition of the deed. I think there can be no question but that the object of Becker at the time of the execution of this deed, and at the date of his letter to Newton of July 31st, 1856, was to vest in Newton a good title in the premises; and such was the desire of the grantee. This relieves the case of a consideration which sometimes proves an embarrassing feature, in analagous cases, leaving only for determination whether the parties have by their acts given effect to their intent.

The doctrine seems to be settled beyond reasonable doubt, that where a party executes and acknowledges a deed, and afterwards either by acts or words, expresses his will, that the same is for the use of the grantee, especially where the assent of the grantee appears to the transaction, it shall be sufficient to convey the estate, although the deed remains in the hands of the grantor. At the time this second deed was executed, Becker did not pretend to be the rightful owner of the premises, and the facts I think show conclusively that he intended to vest the legal estate in Newton at the date of his letter of July 31st, and actually did all he could to carry out such in-

tent.   The grantor was then in St. Paul, and the grantee in Superior, Wisconsin, and a manual delivery in person was impossible.   But he certainly both speaks of, and treats the deed, as belonging to Newton, had placed the same where he deemed it safe against accidents to him, and offers to record it if Newton wishes it done.   It is true, he says he would rather not record it until he sees Newton in St. Paul, but that clearly was not with the object or design of controlling the ultimate disposition of the deed, but rather for the benefit of Newton, that he might see it was *all right* before recording.   No record was necessary in order to pass title, and both parties evidently thought the legal title was then vested in Newton.   The latter assents to the disposition Becker had made of the deed, and if Becker might still be considered as having control of the deed, it would rather be as Newton's agent, than as of his own right.   It is impossible even to imagine any valid reason why the grantor should have desired any control of the deed, since there was no condition whatever to be performed by the grantee to entitle him to receive the deed; but upon the facts disclosed, the grantor would have been a wrong doer in withholding the deed after demand.   Every presumption therefore must be in favor of giving full effect to the deed, as of the date of its execution, or at least, from the time the grantee assented to it.

In 2 *Hilliard on Real Property*, 282, it is stated that "no particular form is necessary to the delivery of a deed."   This may consist in an act without words, or in words without any act.   Thus, where the deed lies upon a table and the grantor says to the grantee, "go and take it up, it is sufficient for you," or, "it will serve your turn," or, "take it as my deed," or, where he holds it out and says, "here is your bond, what shall I do with it," though it never comes into the hands of the obligee; this is a good delivery.   The same is held in *Shep. Touchstone*, 57.   It is true, that in these cases, the grantee is spoken of as being present, but I do not think there is any difference in principle whether the grantor speaks the language to the grantee in person or by letter. The main thing which the law looks at, is whether the grantor indicates his will that the instrument should pass into the

possession of the grantee, and if that will is manifest, then the conveyance enures as a valid grant, although as above stated, the deed never comes into the hands of the grantee.

In *Doe vs. Knight*, 5 *Barn. & Cress.*, 671, the Court went even further, and held that a mortgage found among the papers of the mortgagor after his death, and in regard to the execution of which the mortgagee knew nothing, took effect even as against the creditors of the deceased. The Court there held that a deed will operate as a deed, though never parted with by the grantor, citing several authorities, upon which the Court remark: "On these authorities it seems to me, that where an instrument is formally executed, and delivered, and there is nothing to qualify the delivery; but the keeping the deed in the hands of the executing party, nothing to show that he did not intend it to operate immediately, that it is a valid and effectual deed, and that delivery to the party who is to take by it, or to any person for his use, is not essential." The delivery here spoken of, was a delivery to the sister of the grantor, who lived in the same house with him, but who was not informed of the contents of the paper, nor directed to deliver it to the grantee, and afterwards the deed was taken by the grantor. And in fact, it does not appear ever to have been beyond his control, and the delivery to his sister could have had no other effect than as a circumstance indicating perhaps in some degree the mind of the grantor that the same should enure as a grant. There are several other English authorities nearly to the same effect, which it is deemed unnecessary to cite, as the counsel for the Respondent claims, that while there may be doubt upon the English authorities, the American authorities relieve the question of doubt, and establish that in the case at bar there was no delivery. It may be proper therefore to examine some of these authorities, and see how far they sustain the views of the Respondents.

In *Souverbye vs. Arden*, 1 *John. Ch.*, 240, it was held that "if, at the time of executing a deed, there was no delivery, or intention to deliver, these are facts which should be explicitly proved by the grantor." The Chancellor cites with approbation, *Shelton's case*, (*Cro. Eliz.*, 7,) in which the "deed was

sealed in the presence of the grantee and others, and was read, but not delivered; nor did the grantee take it, but it was left behind in the same place; and yet in the opinion of all the justices, it was a good grant, for the parties came together for that purpose, and performed all that was requisite for perfecting it, except an actual delivery; being left behind, and not countermanded, it was held to be a delivery in law." In this case it is true the parties were present, but no act seems to have been done save to read the deed, that is, to make the grantee acquainted with the contents, and the decision must have been based on the ground that the minds of the parties assented to it as a deed. If this assent be ascertained in any other manner than by the personal presence of the grantor and grantee, I do not see why it should not be equally binding. And in *Souverbye vs. Arden* it is further held, 'that "a voluntary settlement, fairly made, is always binding upon the grantor, unless there be clear and decisive proof, that he never parted, *nor intended to part* with the possession of the deed; and *even if he retains it*, the weight of authority is decidedly in favor of its validity, unless there be other circumstances beside the mere fact of his retaining it, to show it was not intended to be absolute." If this be true of a mere voluntary deed, where the grantor is under no obligation to convey, it would seem the presumption should be much stronger in favor of the validity of a deed, where the grantor was under both a moral and legal obligation to convey, and the circumstances show in the strongest manner the intent of the parties to make the grant absolute.

In the case of *Hatch vs. Huskins*, 17 *Maine*, 391, which is cited by Respondents' counsel, the point decided so far as it has any bearing on the case at bar, was, that " the possession and production of a deed by the grantee is *prima facie* evidence of its having been delivered; and for like reasons, in the absence of all contradictory testimony, the presumption arises, when found in the possession and produced by the grantor, that it has not been delivered." The only evidence in that case touching the mortgage in question, was that the same had been found signed and acknowledged among the papers of the administrator of the mortgagor, some years (as

it would appear,) after the death of the latter, there being no evidence aside from this that it was ever intended to give it effect as a mortgage.   The case is, therefore, evidently not very closely analogous to the one at bar.

The case of *Maynard vs. Maynard*, 10 *Mass.*, 456, which is also relied upon by the Respondents, although perhaps more nearly analogous to the present than the one last above cited, is still widely different from it.    The point decided as stated in the syllabus is, that " where A. signs and seals a deed conveying land to his son, and leaves it with the scrivener, with directions to get it recorded, which was done ; and the deed, at the grantor's request, still retained in the scrivener's hands until the death of the son, when the father reclaimed and cancelled it, the son having known nothing of the transaction; it was holden, that the father was still entitled to the land, as against the heirs of his son, the conveyance never having been perfected by a delivery of the deed." The Court in its opinion says, that " the act of registering a deed does not amount to a delivery of it, there not appearing any assent on the part of the son, or even any knowledge that the deed had been executed in his favor." I think it may well be questioned whether such act does not amount *prima facie* to a delivery, as a number of authorities assert such doctrine ; but the Court in that case did not base its decision on that fact, or certainly not that alone, as it is further remarked, " but the facts in the case at bar, testified by the person who acted as the scrivener and magistrate, leave no doubt of the intention of the grantor ultimately to pass this land to his son but to *keep the control over it,* until he should be more determined upon the subject." And herein we think the facts in that case show directly the opposite of what is shown by the facts in the case at bar.    That was the case of a voluntary conveyance, and not only was the object of the conveyance totally different from that in the present, but the intent of the parties as to the control of the deed, as evidenced by the facts, was likewise different.    And even in that case it was not decided whether the record of the deed would not be sufficient to give a title to attaching creditors of the grantee as against the grantor.

In *Stilwell vs. Hubbard*, 20 *Wen.*, 44, where the grantee was not present at the time of the execution of the deed, no formal delivery having been made to a third person, and the grantor by his declaration showing that he *intended* the deed should operate in the nature of a testamentary disposition not to take effect until his death, the deed was held inoperative for want of delivery. That case does not reach the question here at issue. Bronson, J., in delivering the opinion of the Court, says: "The deed was never delivered to nor accepted by Altie, the grantee, but remained in the possession of the grantor until the time of his death. There were no formal words of delivery and nothing was said at the time the deed was executed *from which it can be inferred* that Hubbard intended it should be a present operative. conveyance. *On the contrary, it plainly appears that he intended the deed should not take effect until after his death.*" The Court cite *Doe vs. Knight*, and it may reasonably be inferred, that had the deed fallen within the principle of that case, it would have been sustained.

The case of *Scrugham vs. Wood*, 15 *Wen.*, 545, is more nearly analagous to the one at bar, in which it was held that where a deed of lands is prepared for execution, read, signed by both parties and acknowledged as their deed before an officer authorized to take acknowledgements, it is a complete and valid deed, notwithstanding the witnesses present at its execution unite in testifying that there was no *formal delivery* of it, and the deed, after the death of the grantor, be found in his secretary among his private papers. The Court say, "no one can doubt, from the account of the execution of the deed given by the Commissioner in connection with the previous preparation of it at the instance of Scrugham, that it was the *understanding and intent* of all parties at the time of the execution and acknowledgment, that it was delivered." And the case of *Doe vs. Knight* is here expressly cited with approval.

In *Jones vs. Jones*, 6 *Conn.*, 111, the point actually decided as appears from the syllabus was, that "where a parent in consideration of natural affection, executed deeds of part of his estate to two of his children, to secure a provision for

them, but retained such deeds in his custody, giving directions to his wife to lodge them, after his death, with the town clerk for record, which was accordingly done; it was held, that this was an agreement, which a Court of Chancery would enforce. In that case it was not claimed or pretended on the part of the Plaintiffs (so far as appears from the report,) that there had ever been a delivery of the deeds, but that "these deeds being intended as a family arrangement, in the nature of a testamentary disposition, a Court of Chancery would give them effect, notwithstanding the grantor retained the custody of them during his life time." And as the reasoning of the Court was almost wholly directed to a discussion of the correctness of this position, the remark, that "the putting them (the deeds,) into the custody of the town clerk for record, must be laid out of the question—it was no delivery of them," is only incidental at most, if not wholly *obiter*. The case is scarcely parallel in any sense with the one at bar, and undertakes to settle or decide no principle save that stated in the syllabus.

The case of *Hale vs. Hills*, 8 *Conn.*, 39, treats solely of the admissibility of certain evidence, where delivery of a deed was one of the questions in issue, and is entirely silent as to what constitutes a good delivery.

The case of *Farrar vs. Bridges*, 5 *Humphrey*, 412, holds that "no formal or ceremonious delivery of a deed of conveyance is necessary, if no condition be annexed and nothing remains to be performed in order to give effect to a deed of conveyance, its signing, sealing and attestation as a valid instrument between the parties will make it complete and effectual, although the instrument may be left in the possession of the bargainor." And in *Harris vs. Sanders*, 2 *Strobh. Eq.*, 370, it is held that "there is no prescribed formula for the delivery of a deed. If it appears from all the facts and circumstances that the gift or contract was complete without any conditions or qualifications annexed, and without anything more remaining to be done, it is a valid delivery and a perfect deed although left in the hands of the donor." In the case at bar, can it be reasonably contended, that any conditions or qualifications were imposed by the grantor in order

to its taking full and complete effect? Or that, had the grantee been present, it would not actually have been delivered into his hands, instead of being deposited in the safe of Hollinshead & Becker for his use? And where the intent of parties is manifest, I know not why Courts should not give it effect in this case, not less than others relating to contracts. The cases above cited would seem sufficient to show that the American authorities have established no different rule from that adopted in England with reference to the delivery of a deed, and many others might be cited, which are equally strong in favor of the position of the Appellant. *Rathbun vs. Rathbun,* 6 *Barb., S. C.,* 98; *Roosevelt vs. Carow, id.,* 190; *Folley vs. Vantuyl,* 4 *Hals. R.,* 153; *Rose vs. Rose,* 7 *Barb.,* 174; *Bunn vs. Winthrop,* 1 *John. Ch.,* 329; 4 *Cow. & Hill's Notes on Phil. Ev.,* 829; 12 *Ala.,* 734; *Lady Superior vs. McNamara,* 3 *Barb. Ch. R.,* 375; *Bryan vs. Wash.,* 2 *Gil.,* 557.

There are other facts in the case sufficient in my view to show that even were there no delivery in 1856, the deed was received by the grantee in the spring of 1857, previous to the execution of his mortgage to the Plaintiff. But it is unnecessary to discuss that point, as we think there was a valid delivery of the deed in the summer of 1856, and that the lien of the mortgage is prior to the conveyance to Respondents.

The judgment below is reversed.