JOSEPH WALTER

*v.*

MATILDA WAY *et al.*

*Opinion filed November 8, 1897.*

1. DEEDS—*the essence of delivery is the intention of the parties.* To make the delivery of a deed valid it must be manifest that the grantor intended the grantee to become possessed of the estate.

2. SAME—*delivery to third person for grantee must be absolute.* Delivery of a deed to a third person for the grantee must be absolute to be a good delivery, and if the grantor retains a future control of the deed no estate passes.

3. SAME—*deed intended to operate as a will must be executed with formalities of a will.* A deed which is intended by the grantor to operate precisely as a will must be executed and witnessed in accordance with the provisions of the Statute of Wills, in order to be valid.

4. EVIDENCE—*evidence held insufficient to show delivery of deed to third person for grantee.* The delivery of a deed to a third person for the grantee is held by the court, after full consideration of the evidence in this case, not to be sufficiently established.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

ELMER DeWITT BROTHERS, (LUTHER LAFLIN MILLS, of counsel,) for appellant:

Delivery of a deed is essential to the transfer of title by such an instrument, but actual dispossession by a grantor of the instrument is not invariably necessary. Delivery is that part of the operation in executing a deed by which the grantor signifies his intention when and how it is to take effect. Williams on Real Prop. 147.

Although delivery is made the supreme test in determining the intent of a grantor to pass title by the instrument, the question of delivery itself becomes one of intention, and the rule is that it is complete when there is a clearly manifested intention on the part of the grantor to make the instrument his deed. *Jordan* v. *Davis,* 106 Ill. 336; *Rawson* v. *Fox,* 65 id. 200; *Stevens* v. *Hatch,* 6 Minn. 64; *Vaughn* v. *Godman,* 94 Ind. 191; 1 Devlin on Deeds, sec. 262.

Intention is a controlling element, and it may be manifested by acts alone, by words alone, or by both, either concurrent or successive. *Hill* v. *Hill*, 119 Ill. 242; *Masterson* v. *Cheek*, 23 id. 72; *Walker* v. *Walker*, 42 id. 311; *Byars* v. *Spencer*, 101 id. 429; *Otis* v. *Spencer*, 102 id. 622; *Provart* v. *Harris*, 150 id. 40; *Bryan* v. *Wash*, 2 Gilm. 262.

The question whether there was a delivery of the deed or not, so as to pass title, must, in a great measure, depend upon the peculiar circumstances of each particular case. The question of delivery is one of intention. *Jordan* v. *Davis*, 108 Ill. 336; Devlin on Deeds, sec. 262.

Delivery of a deed to a third person, to be held until the grantor's death, will vest title in the grantee, and upon the death of the grantor the deed will take effect and relate back to the time of the first delivery. Devlin on Deeds, sec. 280; *Stone* v. *Duvall*, 77 Ill. 475.

Where a deed is delivered to a third party to be delivered to the grantee upon the happening of some event, it will not take effect as a deed until the second delivery, but when thus delivered it will take effect by relation from the time of the first delivery, and title will pass as of that time. *Stone* v. *Duvall*, 77 Ill. 475; *Ball* v. *Foreman*, 37 Ohio St. 132; *Foster* v. *Mansfield*, 3 Metc. 412; *Latham* v. *Udell*, 38 Mich. 238.

Delivery and acceptance may be simultaneous, as where delivery is made directly to the grantee in person; or they may be successive, as where the delivery is to a third person. But acceptance cannot occur before delivery. *Insurance Co.* v. *Campbell*, 95 Ill. 267.

H. H. TALCOTT, for appellees:

If the deed is not delivered in the lifetime of the donor no title passes. *Hoig* v. *Adrian College*, 83 Ill. 267; *Cline* v. *Jones*, 111 id. 563; *Byars* v. *Spencer*, 101 id. 429.

There must be an unqualified delivery in some way,— an acceptance by the grantee. The title must be presently vested in the grantee without any conditions. *Mas-*

*terson* v. *Cheek,* 23 Ill. 76; *Basket* v. *Hassell,* 107 U. S. 602; *Stinson* v. *Anderson,* 96 Ill. 373; *Hayes* v. *Boylan,* 141 id. 400.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This is a bill, which, as originally drawn and subsequently amended, was filed by the appellant, Joseph Walter, against the appellee, Matilda Way and others, for the purpose of establishing in appellant the ownership of two lots in the village of Desplaines in Cook county. The appellees are the brothers and sisters and nephews and nieces of one Christopher Haverly, for many years a resident of said village of Desplaines. Christopher Haverly died at Desplaines at the age of about seventy-one years on April 8, 1893, unmarried and intestate, and leaving the appellees as his only heirs-at-law. He kept a livery stable which was situated upon the premises owned by him. There was also a house upon said premises in which he sometimes lived. At the time of his death the premises were rented to one Winchell. On June 3, 1890, Christopher Haverly made a deed of the lots in question to the appellant, Joseph Walter. Joseph Walter was a harness maker, living in the village near the premises of Christopher Haverly. The appellant was an intimate friend of the deceased, Haverly; and Haverly entertained for him a high degree of regard and affection. During the last year, or year and a half of Haverly's life, he lived in some rooms over the harness shop of the appellant.

The appellant claims to be the owner of the lots in question, by virtue of the deed so executed by Haverly on June 3, 1890. The appellees claim to be the owners, as heirs of Haverly, and contend that the deed executed to the appellant was never delivered to the grantee therein, and, therefore, never took effect as a valid conveyance. The only question in the case is, whether or not there was a delivery of the deed to the appellant. The circuit court, before whom the cause was heard, found that there

was no delivery of the deed, and dismissed the bill for want of equity.

The question as to what constitutes the delivery of a deed has often been passed upon by this court. A delivery is necessary to render a deed operative. It has been held, that no particular form or ceremony is required to constitute a sufficient delivery. It has also been said, that a delivery may be by acts or words, or by both, or by one without the other. But it is well settled, that several things are necessary to constitute a valid or effective delivery of a deed. One of the essential requisites of a sufficient delivery is, that the deed pass beyond the dominion and control of the grantor. Another requisite is the intention of the grantor, and of the person to whom the deed is delivered, that it shall presently become operative and effectual. The essence of delivery is the intention of the parties. In order to make the delivery valid, it must be manifest that the grantor intended the grantee to become possessed of the estate. It is not essential in all cases, that the deed should be delivered into the actual possession of the grantee. It may be delivered to a third person for the benefit of the grantee. When the delivery is to a stranger for the benefit of the grantee, it must be absolute in order to be good. If a future control by the grantor is retained over the deed, no estate passes. When it is accepted by the beneficiary, the delivery is as good, when made to a third person for his benefit, as though made directly to him. Where a grantor makes a deed and delivers it to a third person to hold until his death, and then to deliver it to the grantee, and parts with all control over it, and reserves no right to recall the deed, or alter its provisions, the delivery in such case will be effective, and the grantee on the death of the grantor will succeed to the title. Although the delivery of the deed to such third person to be retained until the death of the grantor, and then to be delivered to the grantee, is not an absolute delivery, so as to vest an

immediate estate in the land, yet it will be good to pass the title at the grantor's death to the grantee or his heirs. (*Bryan* v. *Wash*, 2 Gilm. 557; *Byars* v. *Spencer*, 101 Ill. 429; *Cline* v. *Jones*, 111 id. 563; *Provart* v. *Harris*, 150 id. 40; *Stinson* v. *Anderson*, 96 id. 373; *Stone* v. *Duvall*, 77 id. 475; 2 Devlin on Deeds, secs. 262, 280).

The amended and supplemental bill in this case alleges, that the deed was delivered by Christopher Haverly to one Thomas Luce, as the agent for appellant. Upon looking into the record we are unable to find any such facts as, in our opinion, constitute a delivery of the deed to Luce, either as the agent of the appellant to receive the deed, or as the agent of Haverly to deliver the deed to appellant. On the night of April 8, 1893, in one of the rooms above appellant's harness shop Haverly was very sick, and Luce was present with him. Luce says he was satisfied that Haverly was going to die, and so told him. Luce then asked the deceased, if he had any papers to fix up, or if there was anything he wanted done, and told him that it would be better for him to do what he had to do at once. The deceased replied as follows: "When I went down east, I had all my papers fixed up before I went. I deeded those—that lot and barn and the house and lot—to Joseph Walter. I made another paper disposing of my personal property. Mr. Senne made them." Luce told him to send for Senne. He said to Luce, that he wanted the paper in reference to his personal property changed. Luce told him that he ought to do it at once, on that night. The deceased replied, "Oh, pshaw! wait until morning." Luce told him that he might not live until morning, and asked him where the papers were. The deceased replied, "They are in the other room in that tin box. It was a bread box, and there is a bread box sitting on top of it. It is there." The other room referred to was the kitchen, in which the deceased was in the habit of cooking his meals, and adjoined the bed-room in which he was sick. Luce asked him if Walter knew anything about

the deed. He replied, "Yes, he knows all about it." Luce asked him if the deed was on record. He said, "No; all he (Walter) has got to do with it is to take it and put it on record." While he and Luce were talking, the appellant and Winchell came into the room. Just before they entered the room, the deceased protested against sending for Senne that night, and said, "I don't want Winchell to know anything about this business at all. Don't get the man (Senne) out of bed in the middle of the night; we can do that to-morrow." Appellant and Winchell after a few moments went down stairs; thereupon the deceased proposed to fix up the matter the next day, and said that he would on the next day sell his horse and road cart for what he could get for them. He also said, "I don't want anybody to say anything about it. When I am gone that is the end of it. I don't want anybody to know the papers are made at all." Luce asked him what he wanted him, Luce, to do with those papers, and he answered, "I want you to take care of those papers." When Luce asked if he should not take them home with him, he said, "I want you to take care of them, so that they will not be destroyed." The deceased said: the deed "is in a bread box—a tin box—sitting in the kitchen with another box on top of it. The deed is there for Joe." Luce had not seen the deed, and did not know where it was, or where the box was which contained it. Haverly died that night, and, after his death, Luce asked the appellant if he knew where the box was, and the appellant replied that the deceased had told him all about the box. Luce then took the box, and subsequently delivered it to the probate court.

The foregoing is substantially all the testimony which connects Luce in any way with the transaction. It is evident that there was no delivery of the deed to Luce for the benefit of the appellant. The deceased merely informed Luce, that the deed was in a box in the adjoining room for the appellant, and that appellant, not Luce,

could take it and record it.   There was no direction to
Luce to take it and record it, but simply a statement
that, after the death of Haverly, the appellant could take
it and record it.

The evidence shows, that, for more than a year prior
to the death of Haverly, the deed was in his possession
in the tin box in the rooms occupied by himself.   During
all this time it did not pass out of his control.   About
June 3, 1890, the deceased made up his mind to go to New
York where he had some relatives living.   Before he left
for New York, he sent for Henry C. Senne, a justice of
the peace and police magistrate at Desplaines, with a
view of making some arrangements in regard to his prop-
erty.   He stated to Senne, that he was going away, and·
did not know whether he should come back alive or not;
that he had no desire to make a will, but wanted advice
as to the proper method of disposing of his property with-
out making a will.   Senne took advice, and told him that,
if he would make a deed and provide for the delivery of
the deed, it would be a valid transaction.   Senne advised
him to have a deed made, and left in the hands of some
one, in whom he had confidence, to be delivered in case
he should not return.   The deceased then spoke of the
appellant in very high terms, and requested Senne to
make out a deed to appellant.   Senne thereupon drew
a deed, which the deceased signed in his presence and
acknowledged before him.   The deceased took away the
deed at that time, stating that he intended to leave it in
the possession of Senne to be delivered to the appellant,
in case the deceased should not come back.   Subsequently
the deceased rented a box in the vaults of the Fidelity
Safety Deposit Company, and he and Senne and the ap-
pellant went together to the box, and the deed was de-
posited therein.   The deceased handed one key to Senne
and one key to the appellant, stating that, in case he
should not come back, Senne should get the deed and
deliver it to appellant.   The deed at the same time was

placed in an envelope, and the envelope was sealed, and an endorsement was written upon it by Senne, and signed by the deceased, in these words: "I hereby deliver the within deed to Henry C. Senne, and direct that, in case of my death, said Senne is to deliver said deed to Joseph Walter.—Desplaines, June 3, 1890.—Christopher Haverly." The deceased remained in New York until about January 1, 1891, when he returned to Desplaines. Senne kept the key until such return, and then handed it back to the deceased. Senne says, that deceased did not ask for the key; that he took it for granted that the key belonged to him, and handed it back to him, and nothing was said about it. The appellant kept the key, which was delivered to him, until the expiration of the time for which the box was rented, which was one year. The deceased then surrendered the box, and took possession of its contents. He took the envelope with the enclosures from the box in the safety deposit vaults, and placed them in the tin box in the room occupied by him as above stated, and there they remained until his death.

Although the deed was placed under the control of Senne with instructions to him to deliver it to the appellant in case the deceased should not return from New York, yet Haverly subsequently withdrew the deed from the possession of Senne, and took it back into his own possession. It remained under his control from the time he so took it back into his possession until the time of his death, which occurred more than a year thereafter. In *Provart v. Harris, supra,* we said (p. 47): "It is indispensable, whatever means may be adopted to accomplish the delivery of a deed, that the deed pass beyond the dominion and control of the grantor; for, otherwise, it cannot be correctly said to come within the power and control of the grantee.  *  *  *  If the grantor retains dominion and control over it, the deed is ineffectual for any purpose as a conveyance." The testimony shows, that, one of the essential requisites to constitute the valid and

sufficient delivery of a deed, namely, the parting by the grantor with all power and control and dominion over it, is here wanting.

The proof also shows that, although the deceased desired and intended the appellant to become the owner of the property at his death, yet his intention was not that the deed should become presently operative. The language used by him in his last conversation was to the effect that the property was to be the property of appellant at his death. He did not believe that he was going to die on the night on which he did die. His intended disposition of the property was of a testamentary character, and was not to take effect in his lifetime, but was ambulatory until his death. Such a disposition is inoperative, unless it is declared in writing in strict conformity with the statutory enactment regulating devises and wills. An instrument, which is intended by a party to operate precisely as a will, without being executed and witnessed as a will in accordance with the provisions of the Statute of Wills, will not be allowed to have the effect sought to be given to it. (*Cline* v. *Jones, supra; Hayes* v. *Boylan*, 141 Ill. 400).

The question, whether there is a delivery of a deed or not, depends greatly upon the intention of the grantor. This intention may be manifested by acts and declarations of the grantor, and by the circumstances attending the execution and the custody of the deed. (*Shults* v. *Shults*, 159 Ill. 654). Here, the deceased continued to exercise acts of ownership and authority over these premises after he executed the deed to the appellant. It is admitted that he kept possession of the property, and enjoyed the rents and profits of it, and paid the taxes thereon up to the time of his death. (*Cline* v. *Jones, supra*). All these acts indicated an intention to retain control over the deed and the property during his lifetime. In *Stinson* v. *Anderson*, 96 Ill. 373, where a grantor, after acknowledging a deed conveying his land to his three chil-

dren, left the same with the acting magistrate, requesting him to keep it for the grantor, and saying, if he wanted it, he would call and get it, but if he should die, requesting its delivery to the grantees or their guardian; and, after such deposit of the deed, the grantor and his wife executed a mortgage on the same land to a third person, it was held that this latter act was equivalent to a withdrawal of the deed for the purpose of making the mortgage, and, there being no subsequent act of the grantor showing an intention to make an absolute delivery, no title passed by the deed to the grantees. In *Hayes* v. *Boylan, supra,* the owner of land made and acknowledged a deed thereof to his three sons, Charles, John and Thomas; after which he handed the same to Charles, saying, "Take this deed and put it in our box in the bank;" the grantor did no other act showing an intention to deliver the deed, but requested Charles not to let the other grantees know anything about the matter until the grantor's death; he also retained possession and control of the land up to his death; it was held, that the direction given to Charles was not a delivery, but merely the employment of one of the grantees, as the agent of the grantor to do an act for him, whereby he could retain the custody of the deed during his lifetime; and that the instrument was void as a deed for want of delivery in the grantor's lifetime.

It is true, that the law presumes more in favor of the delivery of deeds in cases of voluntary settlements, particularly those made to infants, than it does in ordinary cases of bargain and sale. And the reason, why the law thus presumes in favor of the delivery of the deed in cases of voluntary settlements made to infants, is that the infant is incapable of doing any act in regard to the deed which he might not avoid on reaching his majority; and it is the duty of the parent, as his natural guardian, to accept and preserve the deed for him. Here the appellant was an adult, and no relationship like that of parent and child existed between Haverly and the appellant.

Other decisions hold, that, where the grantor intends to be understood as delivering the deed, or where he makes a grant and induces the grantee to go upon the premises and make improvements and take possession of the land, in such cases there may be a sufficient delivery; but in all these cases the principle is laid down, that the grantor loses all control over the deed as grantor, and that it becomes operative at once and invests the grantee with full title and control. (*Cline* v. *Jones, supra; Hayes* v. *Boylan, supra; Douglas* v. *West,* 140 Ill. 455).

After a careful consideration of the evidence in the case, and upon an application to that evidence of the rules laid down by this court in regard to what constitutes the delivery of a deed, we have reached the conclusion, that the deed to the appellant was not delivered in such a way as to make it a valid and operative conveyance; and that, therefore, the decree of the court below in dismissing the bill was correct.

Accordingly, the decree of the circuit court is affirmed.

*Decree affirmed.*