[L. A. No. 4008.   Department Two.—April 16, 1917.]

## HARRIET A. FISHER, Respondent, v. L. D. OLIVER, Appellant.

APPEAL—NEW METHOD—PREPARATION OF TRANSCRIPT—CODE PROVISIONS NOT JURISDICTIONAL.—The provisions of sections 953a, 953b, and 953c, of the Code of Civil Procedure, relating to the preparation of the transcript on appeal, which is a substitute for the bill of exceptions under the old method of appeal, are not jurisdictional, and delays in the preparation due to the reporter and clerk are not fatal to the appeal.

ID.—APPEAL FROM JUDGMENT WITHIN SIXTY DAYS—SUFFICIENCY OF EVIDENCE—APPLICABILITY OF CODE PROVISION TO BOTH METHODS.— The provision of subdivision 1, section 939, of the Code of Civil Procedure, that exception to the decision upon the ground that it is not supported by the evidence may be considered upon an appeal from the judgment when taken within sixty days from the entry, applies to appeals taken under the old as well as under the new method.

DEED FROM BROTHER TO SISTER—INSUFFICIENT DELIVERY.—Where a grantor while at a hospital awaiting the performance of a serious operation upon him, handed to his brother a deed to his sister of certain real property with instructions to deliver and record it upon his death, but later withdrew the deed from the custody of his brother and retained possession of the property thereafter until his death, no valid delivery of the deed was effected.

ID.—DEED IN POSSESSION OF GRANTOR—DELIVERY AFTER DEATH.—Saving under exceptional circumstances, ownership of real estate so far as that ownership is to be parted with by deed, necessitates a delivery of that deed to terminate the grantor's title, and where a deed remains in the possession of a grantor, to be delivered and to take effect after his death, the deed is void for want of delivery during his lifetime.

ID.—EVIDENCE—SUBSEQUENT ACTS AND DECLARATIONS OF GRANTOR.— While a grantor after parting with title will not be permitted to disparage the title which he has conveyed, and while a parting with title accompanies the delivery of his deed, yet when the very question in issue is whether the grantor has parted with title and whether in fact he has delivered his deed to this end, evidence of his acts, including herein his declarations after the time when it is contended he had so parted with title, is admissible and of great weight in the determination of this question.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge.

The facts are stated in the opinion of the court.

Hulme & Eckman, and Elmer B. Sanford, for Appellant.

Murphy & Poplin, for Respondent.

HENSHAW, J.—Plaintiff, sister of William J. Fisher, deceased, brought this action against the administrator of his estate to quiet her title to certain lands in the county of Los Angeles. Plaintiff's title admittedly rests upon an asserted conveyance to her of the lands by deed of her brother and his wife. The deed was never recorded and it was found amongst the personal effects of the brother after his death. The question in the case is whether or not there was a legal delivery of the deed made by deceased in his lifetime. The court found that such delivery was made. From the judgment which followed defendant has appealed.

Respondent interposes two preliminary objections to the hearing of this appeal upon its merits. Under the first she insists that in this appeal, taken under the new or alternative method, the reporter's transcript was not prepared and filed in time. Delays had occurred after the preparation of the transcript and its presentation to the judge for his approval and settlement and respondent had objected to the settlement by the trial judge for these reasons, and herein it is said that the phonographic reporter consumed thirty-eight days in the preparation of his transcript instead of the twenty days allowed by law; that instead of giving notice immediately the clerk wasted twenty-two days before giving notice to the attorneys. Respondent contends that the provisions of sections 953a, 953b, and 953c, of the Code of Civil Procedure, are jurisdictional as to the preparation of the transcript, which is a substitute for the bill of exceptions, in this relying on *Boling* v. *Alton*, 162 Cal. 297, [122 Pac. 461]. But respondent's contention in this regard is fully answered by *Smith* v. *Jaccard*, 20 Cal. App. 280, [128 Pac. 1023, 1026], the decision in which case came under the review of this court and was here affirmed.

Respondent next contends that as this appeal is taken only from the judgment, the sufficiency of the evidence to sustain the findings cannot be considered, without regard to the question as to whether or not the reporter's transcript of the evidence was properly settled and certified. Herein she relies upon such cases as *Pico* v. *Cuyas*, 47 Cal. 174, which case has been frequently cited with approval. The decisions in all these cases, however, were directed to the law of appeals under the old method. This appeal, as has been said, is under the new or alternative method. The attack here made is that the "decision," as defined in section 1033 of the Code of Civil Procedure, is not supported by the evidence. Section 939, subdivision 1, of the Code of Civil Procedure, provides that exception to the decision upon the ground that it is not supported by the evidence may be considered upon an appeal from the judgment when taken within sixty days from the entry of the judgment. In *Cortelyou* v. *Imperial Land Co.*, 166 Cal. 14, 17, [134 Pac. 982], it is said: "The appeal having been taken from the judgment within sixty days after its rendition and entry, the sufficiency of the evidence to support the findings, may be reviewed on that appeal as effectually as upon the appeal from the order refusing a new trial, and this is so when the appeal is taken under 940 of the Code of Civil Procedure, as well as where it is taken under the new method prescribed by sections 941a, 941b, and 941c, of the Code of Civil Procedure." It follows that neither of the preliminary objections by respondent to the hearing of this appeal upon its merits is well founded.

The evidence offered by respondent to establish delivery to her of the deed conveying title to the property in question may be briefly summarized. The written instrument, signed and acknowledged by the deceased and by his wife, was, as has been said, found amongst his personal effects after his death. In October, 1903—so testifies the brother of the deceased—the deceased went to a hospital in Los Angeles to undergo an operation of so serious a nature that the patient thought he might not survive it. While at the hospital awaiting the operation he handed a package of papers to the witness and said, " 'Here are my papers. I want you to put them in your safe. In this package is a deed to Harriet [respondent] for the Seventh street property. Now if I pass over the river [to use his own phraseology] you go and record

that deed as soon as you can.' I took the papers and put them in my safe. My brother was in the hospital about two weeks, and after he had been out three or four months he asked for his papers and I handed the package to him just as I had received it. I did not open the package and did not see the deed to Hattie, and do not know that it was in the package except that brother said it was. He had often stated to me that he wanted to do something for Hattie, because she had taken care of our invalid mother; but he had never stated to me that he intended to give her any particular property. He also stated that he wanted to provide for his own folks too, referring to his wife. Subsequent to the making of the deed, he referred to it just in an ordinary way. I can't give his language, but he referred to his having already deeded that property to her." Plaintiff's own testimony was that she resided in New York City and frequently received letters from her deceased brother, and three or four weeks after he had left the hospital she received one such letter "stating that he had deeded the valuable property to me." She did not have this letter, as she destroyed all which she received. About a year after he had left the hospital she visited him at his home near Los Angeles, in response to his invitation. While on that visit her brother said to her on a trip which they were making to Los Angeles, " 'I am going to take you to the property which I deeded to you.' He did so, and stopped in front of the property and said, 'Hattie, I have deeded it to you. I have deeded it outright to avoid lawyers' fees. It is valuable property and I have placed a small mortgage on it. I will take care of it.' . . . Of course it was understood that I was not to have the property until his death. He often spoke of his property in his letters, and about a year before his death he wrote me that he had just been to look over the property and said, 'I have had two conservative judges appraise the Seventh street property which I deeded to you. They have appraised it at one hundred thousand dollars.' "

The foregoing facts present an epitome of all the evidence for respondent, and upon that evidence the court found that in taking plaintiff to view the property and in declaring to the plaintiff, as above quoted, that "this is the property I deeded. I have deeded it outright, etc." the deceased "then intended that said delivery of said deed should be and it was complete and absolute." The court further found that the

withdrawal of the deed by the deceased from the custody of
his brother and the taking of it into his own possession was
"without the knowledge or consent of plaintiff," and "that
such possession of said deed ever after the same was so re-
turned to the deceased was held by him for the said Harriet
A. Fisher, grantee therein, and so treated by him, and said
deed was by him so recognized and treated as having been
absolutely delivered to plaintiff and the title in and to said
property vested in her." As against these findings of deliv-
ery appellant places reliance upon the two appeals in *Moore*
v. *Trott,* which are reported, the first in 156 Cal. 353, [134
Am. St. Rep. 131, 104 Pac. 578], the second in 162 Cal. 268,
[122 Pac. 462]. At the same time respondent urges that
the law and reasoning of these cases fully support the findings
which the trial court made. These cases then call for con-
sideration. Upon the first appeal this court was called upon
to review a finding of delivery of a deed growing out of the
following facts: Pat Moore, the grantor, was about to go to
a hospital in Los Angeles to undergo a serious operation. He
turned over certain deeds to one Tietzen, his friend, with an
accompanying letter, from which the following are extracts:
"I am sending you some deeds to lands that I have made,
to be delivered to the parties in case of my not returning from
the California Hospital, Los Angeles, where I am going to
have an operation performed. . . . The deeds that I am send-
ing you you will please lock them in your safe, and in case
I should die immediately hand them to the parties named,
telling them to put them of record as soon as possible. . . .
You will please keep to yourself the names of the parties
named in those deeds until you deliver them, after I pass in
my checks and take flight for the other world from whence
none return." Moore recovered from his operation, returned
home, pursued his usual vocation for sometime thereafter, and
died without ever having retaken possession of the deeds
which he had thus placed in escrow. Upon those facts the
trial court found a perfected delivery to the grantees named
in those deeds. This court in Bank, after reviewing the evi-
dence, reversed the finding as being unsupported by sufficient
evidence, declaring that the evidence failed to establish the
essential condition to the validity of such transfers, namely,
that the delivery is absolute, "so that the deed is placed be-
yond the power of the grantor to recall or control it in any

event.'' Manifestly the evidence to support the asserted delivery in this case, in so far as it may rest upon the instructions to the escrowee, the deceased's brother, at the time when the deceased delivered to that brother the package said to contain this deed, is far less strong than that which was before this court in the Moore case, and which was by this court found to be insufficient. And this for the very obvious reason that in the present case the grantor actually took back and into his possession the deed which he had deposited with his brother, while in the Moore case the grantor allowed the instruments to remain in escrow, and they were in the possession of the escrowee at the time of the grantor's death. But it will be noted that the findings of the court, as above quoted, base the delivery upon the conduct and speech of the grantor after his withdrawal of the deed from his brother and while he continued in possession of it, respondent's contention being that herein this case presents the precise situation tendered to the consideration of this court upon the second appeal of *Moore* v. *Trott, supra.* Upon the second appeal, bearing in mind that the deeds of Moore remained in the hands of the escrowee up to the time of the grantor's death, much evidence was offered showing that after his return from the hospital he repeatedly affirmed that he had disposed of his property by deed, that he had left the deeds with Mr. Tietzen to be delivered when he should pass away, and that the deeds would be delivered when he would not be present. To certain of the grantees named in the deeds he said in terms that he had left their deeds with Mr. Tietzen and that ''Mr. Tietzen would give her the deeds after he [Moore] passed in his checks.'' This court was called upon to review the sufficiency of a finding of delivery under this added evidence, and held that this added evidence, coupled with the fact that the grantor had never recalled the deeds from the possession of the escrowee and had in all respects treated the deeds in the possession of the escrowee as conveying an immediate and irrevocable title, was sufficient to support the finding, saying ''that it is fairly inferable that after his, Moore's, return from the Los Angeles Hospital, finding himself in failing health he intended that the deeds which he had left with Tietzen should absolutely be delivered without power of revocation upon his part, and that he expressed this intent to the grantee under such circumstances as to perfect the delivery.'' But there

still remains the all-important distinction between the second Moore appeal and the case here presented. In the latter the grantor did take possession of the deed and retained it and the management and control of the property until his death, and, as will be seen hereafter, he exercised such dominion over the property as to preclude the conception that he believed that he had parted with the ownership of it. His declarations that he had deeded the property, while he yet retained possession of the deed, had no efficacy to establish the delivery of a deed of gift such as this. The gift was as incomplete as would be the declaration by a donor that he had given away a specific article of personal property while he continuously thereafter retained the possession, dominion, and control of that personal property, using it with every *indicia* of ownership. For, saving under exceptional circumstances which do not here arise, ownership of real estate so far as that ownership is to be parted with by deed, necessitates a delivery of that deed to terminate the grantor's title. And it is unquestionably the general rule that where a deed remains in the possession of a grantor, to be delivered and to take effect after his death, the deed is void for want of delivery during his lifetime. (*Moore* v. *Trott,* 156 Cal. 353, [134 Am. St. Rep. 131, 104 Pac. 578] ; 162 Cal. 268, [122 Pac. 462] ; *Denis* v. *Velati,* 96 Cal. 223, [31 Pac. 1] ; Devlin on Deeds, par. 279 ; *Stevens* v. *Hatch,* 6 Minn. 64, (19) ; *Stilwell* v. *Hubbard,* 20 Wend. (N. Y.) 44 ; *Walter* v. *Way,* 170 Ill. 96, 104, [48 N. E. 421].)

We have thus far considered the case presented by the evidence of respondent alone, and the conclusion is unavoidable that that evidence, without regard to any conflict raised by the evidence of defendant, is insufficient to establish a delivery and so a conveyance of title to respondent. But it is pertinent to point out that the evidence on behalf of defendant, both that admitted and that erroneously refused admission by the trial court, wholly supports the view expressed, that the deceased did not at all understand that he had parted with title during his lifetime. Thus it was shown that the deceased owned and continued in the use and occupancy of this property for eight years after his return from the hospital and after his conversation with his sister. Five years after this conversation with his sister he made application to the Ger-

mania American Trust Bank of Los Angeles for a loan of twenty thousand dollars upon the property. The application was signed by the deceased, who therein stated that he was the owner of the property. The loan was granted and he executed a mortgage to the bank for the amount of the loan, and in this mortgage covenanted that "there were no outstanding secret equities in the property and that the said William J. Fisher was the owner and the sole owner of the said property." Still further, the grantor sold a part of the land described in the original deed, and by other writings and declarations asserted the full ownership over the property which actually he exercised. Much, if not all, of this evidence was refused admission by the court, which based its rulings upon *Bury* v. *Young,* 98 Cal. 446, [35 Am. St. Rep. 186, 33 Pac. 338]. It has been pointed out by this court that *Bury* v. *Young* has been misunderstood, and the principle governing the admission and rejection of such evidence has been elaborately set forth in *Williams* v. *Kidd,* 170 Cal. 631, [Ann. Cas. 1916E, 703, 151 Pac. 1], and *Donahue* v. *Sweeney,* 171 Cal. 388, [153 Pac. 708]. It is unnecessary to do more than to say that the purport of these decisions is that while it is true, as it always has been true, that a grantor after parting with title will not be permitted to disparage the title which he has conveyed, and while it is true that a parting with title accompanies the delivery of his deed, yet when the very question in issue is whether the grantor has parted with title and whether in fact he has delivered his deed to this end, evidence of his acts, including herein his declarations after the time when it is contended he had so parted with title, is admissible and of great weight in the determination of this question. The view thus adopted and expressed by this court is not in contrariety with any well-adjudicated decision, but is distinctly affirmed as in such cases as *O'Brien* v. *O'Brien,* 19 N. D. 713, [125 N. W. 307].

We have held that respondent's evidence of delivery, standing alone and by itself, is insufficient to sustain the court's finding to that effect. Upon the assumption that this evidence is all that respondent can produce, it follows that upon the reversal which must here be ordered, the court will make its finding of nondelivery and enter its decree accordingly. In the possible event of a new trial, the court will admit the

evidence of the acts and declarations of the grantor which upon the first trial it excluded.

The judgment appealed from is reversed.

*Melvin, J.,* and *Angellotti, C. J.,* concurred.