[L. A. No. 8463. In Bank.—September 4, 1926.]

# R. L. KIMBRO, Respondent, v. MINNETTE S. KIMBRO, Appellant.

[1] DEEDS — CONVEYANCE TO INTENDED WIFE—GIFT—PRESUMPTION.—— Where a man prior to marriage procured a deed to real property to be taken in the name of his intended wife, in order that if he were unfortunate his creditors could not take it from her, and also that she might have it in case of his death, any moneys furnished by the former before or after marriage in payment of the purchase price will be presumed intended by him as a gift.

[2] ID.—OWNERSHIP — EVIDENCE — PRESUMPTIONS. — Relatively slight acts which may ordinarily be regarded as acts indicating ownership, such as payment of taxes and expenses of repairs and the occupancy of the residence by the family, are not of themselves sufficient to overcome the presumption of gift, in such a case, when satisfactorily established.

[3] ID.—OCCUPANCY OF HOME — VOIDANCE OF CONVEYANCE.—The fact that the husband, at the time he caused the deed to be made and delivered to his intended wife, in such a case, expected to occupy the property as a domicile in conjugal happiness with his wife to the end of his days is not a sufficient ground to avoid the instrument.

[4] ID.—TENANTS IN COMMON—INSUFFICIENCY OF EVIDENCE.—In such a case, the evidence is insufficient to sustain a finding that the husband is a tenant in common in the ownership of the property conveyed to the wife before marriage.

[5] ID. — DEED FROM HUSBAND TO WIFE — INSUFFICIENT DELIVERY.— Where an unacknowledged deed to real property was made by a husband to his wife at the latter's request during the illness of the former, and the evidence, although conflicting, showed that he believed the deed was of no effect until acknowledged and that he would have refused to take the final step necessary to give it validity, the finding of the trial court decreeing the property to be owned by the husband will be affirmed on appeal.

[6] ID.—UNACKNOWLEDGED DEED—VALIDITY OF.—In the absence of a statute providing otherwise, an acknowledgment is not necessary, and adds nothing, to the validity or effect of an instrument as

1. See 13 Cal. Jur. 852; 13 R. C. L. 1386.

5. See 9 Cal. Jur. 156.

6. Validity of unacknowledged instrument, notes, 108 Am. St. Rep. 529; 137 Am. St. Rep. 476. See, also, 1 Cal. Jur. 222; 1 R. C. L. 257.

between the parties thereto and persons having actual notice of its execution.

[7] Id. — Delivery of Deed—Intent.—It is essential to the validity of a transfer of real property that there be a delivery of the conveyance with intent to transfer the title, and the true test under which delivery is to be determined is in ascertaining whether, in parting with the possession of the conveyance, the grantor intended to divest himself of title; if he did, there was an effective delivery of the deed, if not, there was no delivery.

---

(1) 30 C. J., p. 563, n. 29 New, p. 703, n. 48.   (2) 30 C. J., p. 705, n. 84.   (3) 30 C. J., p. 814, n. 91, 92, 94 New.   (4) 18 C. J., p. 814, n. 94 New.   (5) 1 C. J., p. 750, n. 55; 18 C. J., p. 438, n. 62; 30 C. J., p. 692, n. 77.   (6) 1 C. J., p. 750, n. 56, p. 752, n. 75; 30 C. J., p. 692, n. 81 New.   (7) 4 C. J., p. 691, n. 85; 18 C. J., p. 197, n. 21, p. 198, n. 22; 30 C. J., p. 692, n. 78 New.

APPEAL from a judgment of the Superior Court of Los Angeles County. Franklin J. Cole, Judge. Reversed in part and affirmed in part.

The facts are stated in the opinion of the court.

Page, Nolan, Rohe & Hurt for Appellant.

Willedd Andrews for Respondent.

SEAWELL, J.—Respondent and appellant intermarried in 1909 at the ages of sixty-six and forty-four years, respectively. Each had previously been married, and respondent, during the period covered by the transactions involved in this controversy, was the father of two children, a son and married daughter, issue of a former marriage. Prior to his marriage with appellant he had acquired real property in the state of Illinois, from the sale of which in 1912 he realized the sum of $10,000. This separate fund was used by him in the purchase of three lots or parcels of real property situate in the city of Los Angeles. Appellant having asserted her ownership of lots 61 and 62 of property known as the Normandie Avenue Tract, and also of lot 12, block 1, Vermont Square, known as the home place, respond-

---

7. Intent as essential to delivery of deed, notes, 17 Am. St. Rep. 348; 12 L. R. A. 173. See, also, 9 Cal. Jur. 153; 8 R. C. L. 978.

ent brought an action against her to quiet his title thereto. As to lots 61 and 62, which were improved income properties, and by far the most valuable of his estate, he alleged absolute ownership in himself, and as to lot 12, block 1—the domicile—he alleged ownership to the extent of an undivided one-half interest therein. By her answer appellant claimed said lots as her separate estate. The court caused its decree to be entered adjudging respondent to be the owner in fee absolute of said lots 61 and 62, and as to lot 12, block 1, decreed each to be the owner of an undivided one-half interest therein. The appellant has appealed from the whole of said judgment, claiming that the evidence impels a judgment in her favor as to the separate character of said property, and, further, that there is no evidence whatsoever in the record supporting the findings of the court that respondent was the owner of or had any interest in or to any part of said real property.

Lot 12, block 1, the home place, was purchased from third parties as a domicile January 28, 1909, about one month prior to the intermarriage of respondent and appellant. Appellant, whose name before marriage to respondent was Minnette S. Kuster, was named solely as the grantee in the antenuptial instrument of conveyance, which was an ordinary grant, bargain and sale deed. The purchase price was $3,700. An initial payment of $500 was made upon the passing of title. A flat contradiction exists in the evidence as to whether respondent paid any part of said initial payment. It is, however, admitted that appellant furnished from her separate estate at least $400 of said sum. A subsisting mortgage of $2,000 against said property was assumed by the purchaser, and the sum of $1,200, secured by a trust deed, was borrowed to raise the full amount of the purchase price. This latter sum was afterward paid by moneys received as rentals from lots 61 and 62, which were respondent's separate property. The mortgage indebtedness remains undischarged.

Section 161, Civil Code, provides: "A husband and wife may hold property as joint tenants, tenants in common, or as community property."

[1] Clearly a joint tenancy was not created expressly or impliedly by any agreement or by the conduct of the husband and wife, nor do we think the evidence offered to es-

tablish a tenancy in common was sufficient to overcome the presumption which the law directs to be made from the fact that appellant was named in said deed upon the procurement of respondent as the sole grantee. ''Whenever any property is conveyed to a married woman by an instrument in writing, the presumption is that the title is thereby vested in her as her separate property.'' (Civ. Code, sec. 164.) We have here the case of the respondent procuring the execution of a deed in which a *single* woman with whom he contemplated and soon thereafter consummated matrimony is named as grantee. Any moneys furnished by the husband before or after marriage in payment of the purchase price, in the circumstances of the parties to this action, will be presumed to be intended by him as a gift. This familiar rule is stated in a broad sense in *Alferitz* v. *Arrivillaga,* 143 Cal. 646 [77 Pac. 657], and we doubt not that the presumption of gift should be indulged with equal force to the facts of this case as in the case of coverture. [2] Relatively slight acts which may ordinarily be regarded as acts indicating ownership, such as payment of taxes and expenses of repairs and the occupancy of the residence by the family, are not of themselves sufficient to overcome the presumption of gift, when satisfactorily established. (*Estate of Klumpke,* 167 Cal. 415, 423 [139 Pac. 1062].) The reasons assigned by respondent for making his intended wife the grantee in said antenuptial deed, as related by appellant, were natural and entirely proper and seemingly just in the circumstances of the contracting parties. Her testimony is, substantially, that the husband directed that the deed be made to run in her name as a matter of protection to her against any claim that his heirs might subsequently assert to the property and also as a protection to her in the event financial misfortune should overtake him. As a matter of fact, respondent's testimony is not inconsistent with his wife's claim as to his purpose in having her made the grantee. The following brief quotation taken from his cross-examination fairly discloses the purpose of procuring the deed to be made in appellant's favor:

''Q. You said you put this home place, which you regard as your and her home, into her hand so that if you died she would have it—that is, if you died before she did— or if you should be unfortunate in your other property,

your creditors could not get it away from her? A. Well, I told her if I was unfortunate to lose my other property, they could not take it away from her, yes; she would have it for a home; if I passed away before she did, there would be no question about that."

[3] The fact that the husband, at the time he caused the deed to be made and delivered, expected to occupy the domicile in conjugal happiness with his wife to the end of his days is not a sufficient ground to void the instrument.

During a large part of the fifteen years of married life respondent was physically incapacitated by extreme age and the wife greatly assisted in managing and caring for his estate. She was industrious and frugal and observed rigorous rules of economy, considerations not to be lightly regarded by the interpreter of the antenuptial transaction or agreement. The sum of $1,200 was paid in small amounts in discharge of the trust debt. The mortgage indebtedness of $2,000 remains unliquidated. Her equity, deducting the $400 of her own money which she put into the $3,700 investment, would amount to but $1,300, making an annual average of less than $100 during her entire marital period with respondent.

[4] Without pursuing this subject further we are satisfied that the finding of the court that respondent is a tenant in common in ownership of lot 12, block 1, with the appellant is not supported by the evidence.

[5] This brings us to a consideration of a destroyed deed which was signed and delivered by respondent but not acknowledged, purporting to convey lots 61 and 62, which constituted the most valuable portion of respondent's estate. In 1915 respondent fell very ill with pneumonia and his physician dispaired of his life. While thus ill a deed was drawn at the suggestion of his wife, which by its terms conveyed the title of lots 61 and 62 to her. It was delivered to her unacknowledged. Some time thereafter the husband requested the redelivery of said deed to him and intimated in the conversation that she had obtained his signature and the possession of the deed by employing questionable methods. Incensed by the implication the wife, with a feeling of indignation, returned the instrument to him and he immediately destroyed it. Appellant takes the position that by signing and delivering the deed, though un-

acknowledged, the grantor passed title to the grantee and it was not revived in the grantor by a redelivery or by the destruction of said instrument. The provisions relating to the acknowledgment of deeds are made for the protection and security of creditors and purchasers. Title vested in a grantor passes by his deed to the grantee as completely as it would if the conveyance had been acknowledged and recorded. (1 Devlin on Real Estate, 3d ed., p. 817.) **[6]** In the absence of a statute providing otherwise an acknowledgment is not necessary to and adds nothing to the validity or effect of an instrument as between the parties thereto and persons having actual notice of the execution of it. (1 Cal. Jur., p. 222.) We have no statute in this state making the acknowledgment of a husband's deed essential to give it validity. Granting the rule of law as above stated, we do not think that it should control the instant case but that the questions of intent and delivery are the major considerations. The redelivery of said deed and its destruction occurred in 1915. No reference whatever is made to said deed or its contents by the pleadings of either party to the action. No attempt was made at the trial to reproduce its contents or give it effect. The husband admitted the physical preparation of a deed purporting to convey to his wife said lots 61 and 62. At the time the deed was signed a will had been drawn, at the request of his wife, which he refused to execute. His testimony is that he signed the deed while ill to "gain his peace" which was disturbed by the importunities of his wife. In relating what transpired at and immediately prior to the signing of the deed, respondent, although his wife gives an entirely different version, testified: " . . . . And she [his wife] comes up to town to my lawyer, Mr. Fairall, who was my attorney then, and she had him make a will—there was a sketch made of it, she said afterwards, I didn't see the will; and also had him make a warranty deed to this property, lots 61 and 62, Normandie Ave. Tract; and she had my attorney come to the house and stayed around there for, I guess, an hour very near—and I thought he had come to call on me, I was pretty well acquainted with him; and when he started to go away she says, 'Ain't you going to have Mr. Fairall make your will?' I said, 'No, I don't care about making a will now; probably make one when I get well.' Well, he went away, and the

next evening we were alone, the nurse was out for the evening; she came to the bed with a warranty deed, and she says, 'Now, I want to know if you think more of me than you think of your daughter, I want you to sign this deed.' Well, Your Honor, I was in no condition to put up any arguments, so far as that was concerned, at that time; and I looked at the deed and I saw it was not acknowledged, I says, 'Well, I will sign the deed, but it won't benefit you any for it is not acknowledged,' the words I expressed. After I got well I persuaded her to give up the deed and I destroyed it. Q. After you signed the deed did you hand it to her? A. Yes, she took the deed after I signed it. Q. How long did she have it in her possession before you persuaded her to give it up? A. Well, after I got well, probably a couple of weeks; I don't remember the dates.''

Later he testified that if there had been anyone present to take his acknowledgment he would not have signed the deed. Asked why he signed he made the following reply: ''Well, it was not acknowledged and I knew it was no good.'' While there exists a sharp conflict in the evidence as to what was actually said by the parties at the time the deed was signed we are of the opinion that the testimony of the respondent, which, it appears, must have been given full credit by the trial court, is sufficient to sustain the judgment on the theory that there was no intention on the part of respondent to make a delivery of the deed in the sense that title was to pass. His position is that he insisted the deed was invalid unless acknowledged by him and he would have refused to take the final step necessary to give it validity. He believed that the deed would be of no effect until acknowledged. Under that belief the manual tradition was but one step in the process of execution.

[7] In *Hotaling* v. *Hotaling,* 193 Cal. 368 [224 Pac. 455], the test to be applied to given facts to determine whether a delivery has been effected is fully discussed and the authorities cited. We there said, quoting from *Williams* v. *Kidd,* 170 Cal. 631 [Ann. Cas. 1916E, 703, 151 Pac. 1]: ''It is essential to the validity of a transfer of real property that there be a delivery of the conveyance with intent to transfer the title, and the true test under which delivery is to be determined is in ascertaining whether, in parting with the possession of the conveyance, the grantor intended to divest

himself of title. If he did, there was an effective delivery of the deed. If not, there was no delivery. The solution of this question is grounded entirely upon the intention of the grantor, and this essential matter of intention is a question of fact to be determined by the trial court from a consideration of all the evidence in a given case bearing upon the question." (See authorities cited.)

In determining the question of intent the voluntary surrender of the deed by the wife was a circumstance to be considered in connection with all the other facts of the case.

The evidence being sufficient to support the judgment as to said lots 61 and 62, under the familiar rule, it must stand affirmed.

It is therefore ordered that that portion of the judgment decreeing respondent to be a tenant in common with appellant in the ownership of said lot 12, block 1, Vermont Square, is reversed; that portion of the judgment decreeing respondent to be the owner in fee simple of lots 61 and 62, Normandie Avenue Tract, is affirmed.

It being conceded that appellant asserts no interest or title whatsoever in lot 17, Somerville Place, the decree adjudging respondent to be the absolute, sole and separate owner thereof is also affirmed.

Waste, C. J., Richards, J., Shenk, J., and Curtis, J., concurred.