[Civ. No. 9553.   First Appellate District, Division One.—October 20, 1934.]

J. F. AZEVEDO, as Administrator, etc., Respondent, v. MANUEL FRANCISCO AZEVEDO, Jr., Appellant.

Manuel F. Sylva for Appellant.

E. H. Christian for Respondent.

KNIGHT, J.—This is an appeal by defendant from a decree in plaintiff's favor quieting title to certain real and personal property and granting other relief. Defendant claimed title to the real property under a deed executed by the decedent about two and a half years prior to his death and recorded by defendant a few days after decedent's death; and his asserted title to the personal property was based on a verbal gift *inter vivos*. The decision in the trial

court turned on the question of delivery; and insufficiency of evidence to support the findings and judgment is the ground of appeal.

It is held generally with respect to deeds that a valid delivery is accomplished when the conduct and acts of a grantor manifest a present intent to dispose of the title conveyed by the deed. No particular form of delivery is necessary and any act or thing which manifests such intent is sufficient to establish it. However, manual tradition alone is not enough; the transfer of possession must be with the intent of presently passing title and must not be hampered by any reservation of right of revocation or recall (*Follmer* v. *Rohrer*, 158 Cal. 755 [112 Pac. 544]); that is, in parting with the possession of the conveyance the grantor must intend thereby to divest himself of title. If he does there is an effective delivery. If he does not there is no delivery; and the solution of the question is to be determined from a consideration of all the evidence in the case. Moreover, whether there was such intent to pass present title is purely a question of fact to be determined by the trial court or jury. (*Hansen* v. *Hansen*, 82 Cal. App. 786 [256 Pac. 290]; *Williams* v. *Kidd*, 170 Cal. 631 [151 Pac. 1, Ann. Cas. 1916E, 703].) Accordingly it is held that a deed executed by a grantor with the intention of having it take effect only after his death and which he retains in his possession or under his control will be ineffectual to pass title for want of delivery. (*Fisher* v. *Oliver*, 174 Cal. 781 [164 Pac. 800]; *Hayden* v. *Collins*, 1 Cal. App. 259 [81 Pac. 1120].) Likewise, it is held with reference to personal property that in order to make a valid gift thereof, delivery is essential; and such delivery must be completed in the lifetime of the donor. If, therefore, there be no delivery and the subject of the gift remains in the possession or under the control of the donor the gift is incomplete. (13 Cal. Jur., pp. 36, 37–40.)

The evidence in the present case, in our opinion, shows sufficient conflict upon the issue of delivery to preclude interference with the conclusion reached thereon by the trial court. The essential facts appearing therefrom are as follows: The decedent was the father of plaintiff and defendant and two daughters, namely Mrs. Inez Andrade and Mrs. Isabel Perry. He was predeceased by his wife and con-

sequently his next of kin at the time of his death were his four children. He owned and lived upon the real property in question for many years. It was a farm near Mission San Jose containing eight and a fraction acres, which were cultivated to the raising of vegetables, and through such farming activities decedent accumulated considerable money. For a number of years preceding and at the time of the decedent's death, the defendant was the only child residing on the farm with his father. The others had long since taken up their abodes elsewhere; and defendant operated the farm for his father without receiving any regular wages therefor. The personal property consisted of a small amount of household furniture, farming implements, some livestock, and approximately $150 in cash, all of which was located on the farm. About two and a half years before his death the decedent expressed his intention of giving the farm to defendant, saying that in doing so he would be carrying out the wishes of his wife who died only three months before, and that defendant was entitled to the place because he had worked upon it all his life without receiving anything out of it except a living; and he expressed the fear that after his death plaintiff would in some way get the place away from defendant. For the purpose of carrying out such intention the decedent consulted an attorney in San Francisco. He was accompanied by Mrs. Andrade and her husband. The attorney advised him that he could dispose of the property either by will or by deed, and he explained to the decedent the legal effect of each, particularly with respect to the matter of passing title. After being so advised the decedent stated he desired to make a deed of gift. Accordingly such an instrument was prepared and the decedent signed and acknowledged the same before a notary. Both the attorney and the notary instructed the decedent that in order to complete the gift and make it valid it would be necessary for him to deliver the deed to his son. He said he would do so.

As stated, following the decedent's death the deed was placed on record by defendant. The burden was upon the plaintiff, therefore, to establish nondelivery. This he sought to do by calling defendant as a witness pursuant to the provisions of section 2055 of the Code of Civil Procedure. He testified in substance that upon the return of his father

to the farm a few days after the execution of the deed his father called him into the house and in the presence of Mrs. Andrade took the deed from his pocket, handed it to him and said: "Here is this deed; and everything inside of the gate is all yours"; that his father then said he wanted his daughter Mrs. Andrade to "take charge of the papers and have that deed of gift recorded after his death". Continuing, defendant testified that after receiving the deed he laid it on the table and then went about his chores; that thereafter his father took the deed and placed it in his trunk in the house, where it remained until his death; that his father kept the trunk locked but that he had access to the keys; that after his father's death he took the deed from the trunk and filed the same for record. Mrs. Andrade was called later as a witness for defendant and testified substantially to the same effect. However, before counsel for plaintiff concluded his cross-examination of defendant it was shown that defendant on two former occasions had testified with reference to the transaction involving the delivery of the deed, first, at the hearing of a contest between plaintiff and Mrs. Andrade over the issuance of letters of administration, and again in giving his deposition in the present action; and it appears that the testimony given by him on those former occasions as to the details of the transaction was at variance with that given by him at the present trial. In this regard he stated in substance on both of those former occasions that his father did not hand him the deed; that the deed did not come into his hands until after his father's death; that when his father took the deed from his pocket his father said that "after his death it was" defendant's, that he wanted defendant "to have the property after he died". Moreover, the evidence shows that following the transaction there was no change whatever in the exercise of acts of ownership over the property. It continued to be assessed in his father's name, and his father continued to pay the taxes and insurance and to hire and pay whatever additional labor was needed to operate the place; and the decedent also disposed of the crops and collected and retained the money therefor.

By way of explanation of the foregoing contradictory statements counsel for defendant calls attention to evidence showing that defendant was a man of very limited

education; that he was unable to read or write much more than his own name; and counsel contends that it is apparent from the record that in the course of a severe and skilful examination to which defendant was subjected on those former occasions he did not understand the real purport and meaning of many of the questions propounded to him. Even conceding all of this to be true, the contention presented thereby is one beyond the power of a reviewing court to entertain, for the reason that it involves the credibility of a witness and the weight of the testimony given by him, of which the trial court, as the fact finding body, is the sole and exclusive judge.

Counsel for defendant contends also that in any event the testimony given by defendant on the two former occasions cannot be used as the foundation for a finding of nondelivery, because, as he argues, the limited purpose thereof was impeachment, and that therefore if it be concluded that the witness were impeached thereby, the effect of such impeachment would be to exclude all of his testimony from the case, thereby leaving an entire absence of evidence on the part of plaintiff to overcome the presumption of delivery and the affirmative testimony given on that subject by Mrs. Andrade. We are unable to sustain such contention for the reason that the testimony heretofore given by defendant, if accepted as true by the trial court, doubtless served also as declarations against interest, and therefore were legally sufficient to support the trial court's adverse finding on the issue of delivery.

The evidence as to nondelivery of the deed is controlling also on the issue relating to the validity of the alleged gift of the personal property.

Inasmuch, therefore, as the decision of the trial court rests on a disputed issue of fact and there is evidence legally sufficient to sustain its finding thereon, the judgment must be affirmed. It is so ordered.

Tyler, P. J., and Cashin, J., concurred.