[Civ. No. 6688. Third Dist. July 8, 1942.]

A. C. JORGENSEN, as Administrator, etc., et al., Appellants, v. ALMA C. DAHLSTROM et al., Respondents.

Harold L. Hjelm, Donald B. Fowler, C. Ray Robinson and Willard Treadwell for Appellants.

Frank C. Damrell and Thomas C. Boone for Respondents.

THOMPSON, J.—The plaintiffs, as administrators of the estate of their mother, Maren K. Jorgensen, deceased, have appealed from a judgment quieting title in their married sister, Alma C. Dahlstrom, to a $10,000 joint tenancy bank account and to irrigation and improvement district warrants of the face value of $6,411.20, which were given to her by her mother, but which were alleged to belong to the estate. The complaint fails to allege that the deceased was of unsound mind or that the property was procured by means of undue influence exercised by the daughter, but the cause

was tried on the theory that those issues were involved. The court adopted findings favorable to the defendants in every respect. Judgment was rendered accordingly. A motion for new trial was denied. From that judgment this appeal was perfected.

The appellants contend that the findings do not uphold the judgment; that the judgment is not supported by the evidence, chiefly because the defendant, Mrs. Dahlstrom, failed to sustain the burden imposed upon her on account of the confidential relationship existing between herself and her mother, to prove that the property was not procured by means of undue influence. It is also asserted the court erred in granting defendants' motion to amend their answer, and also erred in receiving and rejecting evidence at the trial, and in denying plaintiffs' motion for a new trial.

Maren K. Jorgensen was a widow sixty-eight years of age. Her husband had been dead several years. The plaintiffs are her sons. Alma C. Dahlstrom is her daughter. The children are married and live in their separate homes in or near Turlock. Until a short time before her death Mrs. Jorgensen lived by herself in her own home in that city. She was possessed of real and personal property of considerable value. Her home was worth $3,850. She owned the irrigation and improvement district bonds previously mentioned, which were of uncertain value. She had a savings account in the Bank of America in the sum of $10,000, together with an open bank account, household goods, several promissory notes and other collateral securities. She was apparently on the best of terms with all of her children. She was liberal in aiding them financially in times of need. Over a period of several years she had loaned her son Ansell $3,700, for which she held his unpaid notes, one of which was secured by a chattel mortgage.

Mrs. Jorgensen was an intelligent, active woman who was mentally and physically capable of looking after her own business affairs. After the death of her husband, she was accustomed to consult with Mr. A. C. McPheeters, a prominent local broker, and with the officers of her bank regarding important business transactions. A year and a half before her death she told Mr. McPheeters she intended to convert her $10,000 savings account into a joint tenancy account to the credit of herself and her daughter Alma. July 6, 1937, on the occasion of the birthday of her daughter,

she voluntarily gave to her the irrigation ditch and improvement district warrants, saying, "Here, Alma . . . here is a happy birthday to you." Mrs. Jorgensen then said, "There is some there in the package that are defaulted, . . . Whatever you get out of them" is your property. Mrs. Jorgensen held the note of her son, Ansell, for the aggregate sum of $3,700. Sometime prior to her death she gave these notes to him, saying, "Here, Ansell here is all your papers . . . you go out in the kitchen and burn them." He accepted the notes' and complied with her request by burning them. She then said to him, "I treat my children the way they treat me." There appears to have been no plan, activity or previous knowledge on the part of any of the children of her intention to give them the property.

Mrs. Jorgensen developed a serious ailment a few months prior to her death. The daughter, Alma, drove her to Modesto daily for six weeks prior to her death, so that she might secure medical treatment. On January 3, 1938, after having advised with Mr. McPheeters and with an officer in her bank, regarding the transfer of funds, Mrs. Jorgensen obtained from the bank a printed form of agreement for the purpose of creating a joint tenancy account of her $10,000 savings fund, with her daughter Alma. The daughter was not present in the bank when she discussed that transaction and procured the form for the agreement; nor had the mother previously discussed that matter with her daughter. That document contains the following significant language:
". . .

"(2) That all funds now to the credit of or which may hereafter be placed to the credit of this account are and shall be the property of the undersigned JOINT TENANTS to be withdrawn as follows:

"Upon the signature(s) of either of us, *or our survivor(s).*

"(3) That in the event of the death of either of us, the survivor(s) will notify the bank at once."

This agreement was taken home and signed by Mrs. Jorgensen. She then handed it to her daughter and told her she intended to create a joint tenancy in that fund, in favor of both of them, and asked the daughter to sign the document and return it to the bank. She said, "Alma . . . I am turning the Bank of America account over to you. . . . There is enough there for both you and Dolores, and I do hope that you see that Dolores goes on with her music." Dolores is the daughter of Alma C. Dahlstrom. The joint tenancy

card was not at once signed by Mrs. Dahlstrom. Two or three days later her mother asked her if she had attended to that matter. When she replied that she had not, Mrs. Jorgensen asked her if she did not want that money. The daughter replied, "Why, yes, mother." Mrs. Jorgensen then told her she had better attend to signing and returning the card to the bank at once. Thereupon Mrs. Dahlstrom signed the card and returned it to the bank on January 7, 1938. There is an abundance of evidence indicating that this joint tenancy account was created by Mrs. Jorgensen voluntarily, after consulting with her business advisers, and without any activity or inducement therefor on the part of her daughter. The evidence satisfactorily shows that the mother was of sound mind and free from undue influence.

January 5, 1938, Doctor Eric Julien, of Turlock, diagnosed Mrs. Jorgensen's ailment as arteriosclerosis, or hardening of the arteries, causing chronic heart disease. The doctor visited her daily from that time until her death which occurred on January 27, 1938. He testified that she was clear headed, mentally sound, and capable of transacting business affairs to the date of her death.

Upon application therefor, her two living sons, Charles H. and A. C. Jorgensen, were duly appointed administrators of the estate of Mrs. Jorgensen, deceased. This suit to quiet title to the $10,000 bank account and to the irrigation ditch and improvement district warrants was instituted. The complaint fails to charge the defendant, Alma C. Dahlstrom, with securing possession of the property in question by means of fraud or undue influence. The pleading does not intimate that the deceased was of unsound mind. The answer denies that the estate has any right, title or interest in the property, and upon the contrary alleged that the warrants were voluntarily given to Alma C. Dahlstrom by her mother, and that Mrs. Jorgensen created in herself and her daughter, Alma, a "joint account" in said bank fund, by a written agreement signed by both parties and delivered to the Bank of America on January 7, 1938, which fund, upon the death of Mrs. Jorgensen, which occurred January 27, 1938, became the absolute property of the defendant, Mrs. Dahlstrom.

Upon notice and motion of the defendants, under section 473 of the Code of Civil Procedure, the court duly authorized an amendment of the answer alleging that the bank account was, by the written agreement of the deceased and

her daughter, Alma, converted into their "joint *tenancy* account" on said 7th day of January, 1938, and that sole title thereto passed to the daughter upon the death of her mother.

■ The court adopted findings favorable to the defendant Alma C. Dahlstrom, in every respect. It was determined that the property in question was formerly owned by the deceased, Maren K. Jorgensen; that she gave to her daughter, Alma, the irrigation ditch and improvement district warrants described in the complaint, as a gift, on July 6, 1937; that the daughter thereupon became and now is the owner thereof, and that the estate has no right, title or interest in said warrants; that on January 7, 1938, the deceased voluntarily transferred her $10,000 bank account into a joint tenancy account for herself and her daughter, by their written agreement signed, dated and filed with the Bank of America at Turlock on said last-mentioned date, and that, upon the death of the mother that fund became the absolute property of the surviving daughter; that Maren K. Jorgensen was free from the exercise of fraud, deception, coercion or undue influence on the part of her daughter, Alma, which affected the conveyance of said property, and, on the contrary, that the mother relied on independent advice in doing so; that the defendant Alma C. Dahlstrom is the sole owner of said fund of $10,000, and that the estate of said deceased has no right, title or interest therein. Judgment was thereupon rendered quieting title to the property in question in the defendant, Alma C. Dahlstrom. A motion for new trial was denied. From that judgment this appeal was perfected.

We are of the opinion the judgment is supported by the findings. ■ It is contended that language in the fifth paragraph of the answer constitutes an admission on the part of the defendants that until the time of her death Maren K. Jorgensen was sole owner of the bank account, which is inconsistent with the finding that she created a joint tenancy account therein in favor of her daughter; that the admission of the pleading is conclusive of that fact, and that the judgment is therefore not supported by the findings in that regard. No authority is cited upon that point. We realize that an unqualified admission in an answer, of a clear and unambiguous allegation of a complaint is deemed to be conclusive of the fact conceded and that a contrary finding should be disregarded. (*White* v. *Douglass,* 71 Cal. 115, 119

[11 Pac. 860] ; *In re Doyle,* 73 Cal. 564, 571 [15 Pac. 125] ; *Stoneman* v. *Fritz,* 34 Cal. App. (2d) 26 [92 P. (2d) 1035] ; 2 Cal. Jur. 818, § 481.) In the present case, however, the answer specifically denies every allegation of the complaint to the effect that the estate was the owner or entitled to possession of the bank fund in question. The answer does admit that *"prior* to the death Maren K. Jorgensen *was* the owner and entitled to the possession of the sum of $10,000." But, following immediately after that statement in the same paragraph, the answer, as amended, specifically alleges that, "On or about the 7th day of January, 1938, the said money was transferred into a joint tenancy account standing in the names of Maren K. Jorgensen and defendant Alma C. Dahlstrom." The answer elsewhere also specifically alleges the creation of the joint tenancy account and asserts that the sole title thereto vested in the daughter at the time of the death of her mother, and that the estate has no right, title or interest therein. The clear language of the answer, even before it was amended, refutes the appellants' claim that the defendants admitted that the deceased was the sole owner of the bank fund *at the time of her death.* The answer may be reasonably construed to mean that the defendants conceded that *sometime prior to her death* the mother was the exclusive owner of that bank account, but that, upon her death it vested absolutely in her daughter, Alma. The language of the answer should be construed as a whole to determine the intention of the pleader. No demurrer to the answer was filed on the ground of uncertainty or otherwise. The judgment is fully supported by the findings in that regard.

■ The court properly granted defendants' motion to amend the answer, under section 473 of the Code of Civil Procedure, by adding the word "tenancy" to the statement that a "joint account" was created by the written agreement of the parties. That allegation now reads that the said money was transferred into "a joint *tenancy* account." The addition of that word did not change the substance of the allegations of that paragraph construed in its entirety. It merely clarified the intended statement of the pleader. It has been uniformly held that reasonable amendments to pleadings should, in the interest of justice, be granted, and that section 473, *supra,* should be liberally construed to accomplish that purpose. (*County of Los Angeles* v. *Lewis,* 179 Cal. 398 [177 Pac. 154] ; *Weck* v. *Sucher,* 96 Cal. App. 422 [274 Pac. 579] ; 21 Cal. Jur. 183, § 127.)

■ In the absence of fraud, unsound mind or undue influence, the deposit or transfer of a fund in a bank as a joint tenancy account, payable to either or the survivor of the parties to the agreement, vests the title thereto immediately in each of them and after the death of one of such depositors the fund becomes the absolute property of the survivor. (California Bank Act, § 15a, as amended, Stats. 1921, p. 1367; 1 Deering's Gen. Laws of 1937, p. 221, Act 652.) Under such circumstances, when the written agreement creating the joint tenancy account is clear and unambiguous, oral evidence in conflict therewith is incompetent. (*In re Kellogg,* 41 Cal. App. (2d) 833, 843 [107 P. (2d) 964].) Moreover, under such circumstances, the deposit becomes conclusive evidence, in an action in which the bank or the survivor is a party, of the intention of the owner to vest the title in the survivor. In the last paragraph of section 15a of the Bank Act (Deering's Gen. Laws, 1937, Act 652), it is said:

"The making of the deposit in such form shall, in the absence of fraud or undue influence, *be conclusive evidence,* in any action or proceeding to which either such bank or the surviving depositor or depositors may be a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors." (Italics added.)

With respect to the admissibility of oral evidence tending to show an intention of the parties to a joint tenancy account, at variance with the written agreement, a different rule from the one previously announced prevails in an action between the joint tenants during the lifetime of both parties. (*Hill* v. *Badeljy,* 107 Cal. App. 598, 604 [290 Pac. 637]; *Spear* v. *Farwell,* 5 Cal. App. (2d) 111, 113 [42 P. (2d) 391]; *In re Kellogg, supra.*)

It follows that if the court in this case properly found that Mrs. Jorgensen was of sound mind and free from undue influence, her written agreement created a joint tenancy account which is *conclusive evidence* of her intention to vest the title thereto in her daughter, absolutely, at the time of the mother's death.

■ The findings and judgment are adequately supported by the evidence. Indeed, a critical examination of the record discloses the fact that there is no substantial evidence that Alma C. Dahlstrom attempted to exercise undue influence, or even resorted to any activity whatever to obtain from her mother the gift of warrants or the creation of the joint ten-

ancy account in the bank. We are thoroughly convinced from the evidence that Mrs. Jorgensen was intelligent, sound-minded and capable of understanding and transacting her own business affairs at all times to the very date of her death, and that she voluntarily gave to her daughter the warrants in question and created the joint tenancy in the savings bank account of her own free will, without any solicitation or influence, undue or otherwise, exerted upon her by her daughter. It is not seriously contended that Mrs. Jorgensen was of unsound mind. The appellants seem to concede there is no evidence to upset the court's finding that the irrigation ditch and improvement district warrants were presented by the deceased to her daughter as a birthday gift, six months before her death.

With respect to the creation of the joint tenancy account, the only serious contention of the appellants is that since a confidential relationship existed between the mother and the daughter, the burden therefore shifted to the defendant Alma C. Dahlstrom to overcome the presumption of law that she procured the creation of the joint tenancy account by means of undue influence, and that she failed to meet that burden.

A conveyance of property from a parent to her child is not deemed to be void merely because of the confidential relationship which exists between them. (*Soberanes* v. *Soberanes,* 97 Cal. 140 [31 Pac. 910] ; 20 Cal. Jur. 442, §§ 40, 41.) In the text last cited it is said:

"It certainly is not true that the relationship of parent and child, in and of itself, is creative of any inference of imposition, undue influence or fraud."

In 2 Jones Comm. on Evidence, 2d edition, page 1055, section 552, it is said, regarding a gift of property from a parent to his child:

"It cannot be deemed prima facie void; the presumption is in favor of its validity; and, in order to set it aside, the court must be satisfied that it was not the voluntary act of the donor."

Nor is it true that mere proof of the relationship of parent and child which exists between the parties to a conveyance of property, will *shift the burden* upon the grantee to prove affirmatively that it was voluntarily executed and free from fraud or undue influence. (*Estate of Hansen,* 38 Cal. App. (2d) 99, 116 [100 P. (2d) 776].) The proof of a confidential relationship *coupled with activity* in procuring the execu-

tion of a conveyance or a will is merely deemed to constitute a prima facie showing of undue influence, which requires adequate evidence to rebut the presumption. In the case last cited it is said in that regard:

"When a presumption of undue influence is raised by showing the existence of a confidential relationship, coupled with activity . . . a *prima facie* showing of undue influence is thereby established which, *in the absence of evidence to the contrary*, necessarily has the effect of invalidating the will. . . . To overcome that prima facie showing it becomes necessary for the proponent to rebut the presumption by evidence which, at least, will have the effect of balancing the *prima facie* showing." (Italics added.)

■ In the present case there is an abundance of evidence to overcome the bare showing that the relationship of mother and daughter existed between the parties to the joint tenancy bank account agreement which is involved on this appeal. The mother had independent advice regarding that transfer of property. She talked with her business adviser and friend, Mr. McPheeters, about that very transfer to her daughter, after her husband died, and about a year and a half before it was actually done. Mrs. Jorgensen was intelligent, clear-minded and evidently possessed unusual initiative and will-power for a woman of her age. There was no previous conversation between the mother and daughter regarding that transaction. The mother was alone when she visited the bank and talked with a bank employee about the transfer of the fund, and when she procured the form required for creating that joint tenancy account. She took the document home and signed it before she handed it to her daughter and told her to execute and return it to the bank. Apparently that is the first time she told her daughter about her purpose to make the transfer. The daughter exhibited no anxiety or haste in obtaining the agreement. She let the document lie around the house for several days. After two or three days had passed the mother asked her daughter if she had signed and returned the joint tenancy card to the bank. When the daughter replied that she had not done so, the mother urged her to sign and return the agreement at once. At the urgent request of Mrs. Jorgensen, that was done about twenty days before her death. Far from showing activity on the part of the daughter to procure the conveyance of the interest in the joint tenancy account, the evidence shows that Mrs. Jor-

gensen, after securing independent advice, voluntarily created that joint tenancy account, of her own free will, with full realization that it would have the effect of conveying the absolute title in that fund to her daughter upon her death. The findings of the court and the judgment to the effect that the joint tenancy account was voluntarily transferred to Mrs. Dahlstrom by her mother, entirely free from undue influence or fraud, are adequately supported by the evidence.

There is no substantial evidence that Mrs. Jorgensen was of unsound mind.

■ It was not prejudicial error for the court to sustain defendants' objection to a question propounded by plaintiffs' attorney to Alma C. Dahlstrom, on cross-examination, inquiring whether she did not know that her brother Ansell still acknowledged his debt of $3,700 to the estate, in spite of the fact that his mother handed him his notes for that amount and told him, in effect, that she intended to cancel the debt and that she wanted him to burn the notes, which he did. It is contended this evidence of his acknowledgment of the debt would have been competent to show the unreasonableness of the assumption that Mrs. Jorgensen intended to give her daughter the savings fund of $10,000 on the theory that she had also made similar "advancements" to her sons, which were to be subsequently charged against them in distribution of the mother's estate.

In view of the broad scope of examination which is allowed in suits in which the question of the mental competency of the donor of a gift of property is involved, that evidence might have been properly received. However, the question of "advancements" to the children, to be charged against the estate, was not involved in this case. It was not contended that the gifts of the bank account and the improvement district warrants to Mrs. Dahlstrom were made *as advancements* against the estate. Moreover, the subject of the cancellation of those notes of Ansell was fully covered in his subsequent unrestricted examination as a witness. He corroborated in every detail his sister's testimony in that regard. He said that his mother, in the presence of his sister Alma, asked for an envelope upon which his name was written, and that she then opened and carefully examined its contents, saying to him:

"Ansell, I have got something I want to give you. . . . I

want you to burn those papers. . . . You have paid me a lot
on it . . . and I have never kept track of what you have paid
me. . . . You burn those papers. . . . They are all here, I
guess. . . .'' Handing the documents to him, she said: ''Now,
Ansell, you burn those papers.''

He testified that the envelope contained the notes which
he had previously given to his mother to represent several
loans of money which he had procured from her, together
with one chattel mortgage. He said he did not know that
his mother had even recorded the chattel mortgage. He ad-
mitted that he and his sister then burned the documents in
the kitchen stove, as he was requested to do.

In a subsequent lengthy examination of Ansell which was
not restricted in any particular, the entire subject-matter
appears to have been fully covered. Plaintiffs then had every
opportunity to ask him if it was not true that he did not
accept the notes from his mother as a gift, and, on the con-
trary, if he did not still consider himself indebted to the
estate. No such question was asked of him. If he had so
stated, it would have been inconsistent with his unqualified
admissions regarding that transaction. At least the order
sustaining the former question was harmless.

 The court did not err in permitting Mr. McPheeters to
testify that Mrs. Jorgensen consulted him regarding her de-
sire to give some of her property to her children. He said
she told him she wanted to give her savings bank account
to her daughter. He said she frequently discussed with him
her various business transactions. He advised her to procure
from the bank a printed form for creating a joint tenancy
account, which the bank was accustomed to use, and to exe-
cute it herself and have her daughter also sign it, and then
file it with the bank. He explained the result of that transac-
tion, saying that the title would then vest in her daughter
upon the death of Mrs. Jorgensen. He said that she followed
his advice and transferred the account in that manner. That
evidence was competent to show that the creation of the joint
tenancy account was voluntarily made by the deceased, upon
the independent advice of an expert broker and friend whom
she was accustomed to consult regarding her business transac-
tions. That evidence was directly addressed to the issue of
undue influence. The fact that she acted voluntarily with
independent advice in arranging to give that savings fund
to her daughter refutes the theory that it was procured by

undue influence. When the mental condition of a donor or a testator is involved in a conveyance or a will, the declarations of a decedent with relation thereto are competent, whether they are made before or after the transaction is completed, provided they are not too remote. (4 Jones Comm. on Evidence [2d ed.] 2949, § 1614.)

The court did not err in permitting W. W. Ferguson, the assistant manager of the Bank of America, where Mrs. Jorgensen had kept her accounts for many years, to testify regarding numerous business transactions which he had discussed with her, that:

"In all the transactions we had with her, why, we considered her a woman of very alert mind and positive in her manner. . . . I would consider that Mrs. Jorgensen was a very alert business woman."

The witness said that he knew Mrs. Jorgensen well, and that he had seen her at least once or twice a month, or possibly every week for five years before her death, and that she was accustomed to talk with him about her business affairs and property interests. The challenged statements are competent evidence of the characteristics of an individual which may be readily observed by an acquaintance who frequently comes in contact with her, and who is accustomed to discuss with her many business affairs. Such characteristics and traits may be testified to by a non-expert witness, without first qualifying as an intimate acquaintance under the provisions of section 1870, subdivision 10, of the Code of Civil Procedure. (*People* v. *Lavelle,* 71 Cal. 351 [12 Pac. 226]; *People* v. *Manoogian,* 141 Cal. 592 [75 Pac. 177].)

The appellants contend that the court erred in permitting Mr. McPheeters to testify regarding Mrs. Jorgensen that she was "a very shrewd investor" and that "her mental condition was good," for the reason that it does not appear he was an intimate acquaintance of the deceased. The plaintiffs also moved to strike those answers from the record on the same ground. That motion was denied, as the minute order shows, "with limitations expressed in the opinion filed herein." We assume that "opinion," to which reference is made in the minute order, contains the decision of the court prescribing the limitation of the application of the evidence, and the purpose and extent for which it is conditionally permitted to remain in the record. That part of the decision is not before us. Ordinarily an opinion of a trial court is no

part of the record on appeal, and may not be considered by a reviewing court. But where a written document which is referred to in the minute order and filed by the court specifically determines the motion to strike out evidence, it becomes a part of the court's order and may be considered in determining what the court decided. Since that portion of the ruling is not before us, we must assume, in support of the judgment, that it specifically limited the application of the evidence to the purpose for which it is competent.

Moreover, we are of the opinion the record contains sufficient evidence upon which the court was warranted in holding that the witness was an intimate acquaintance of Mrs. Jorgensen, in contemplation of the provisions of section 1870, subdivision 10, of the Code of Civil Procedure, and that he was therefore qualified to testify to his opinion regarding her mental sanity.

The evidence clearly shows that Mr. McPheeters was an expert broker in Turlock, of wide experience in business affairs; that he had known the deceased for twelve years, and that she was accustomed to consult with him frequently regarding her family affairs and her property interests; that she had often talked with him about rendering financial aid to her children, and had consulted him regarding her desire to give to her daughter the savings account which is involved in this suit, together with the manner of accomplishing that purpose. In a lengthy examination he related many of those transactions. We may not say such evidence fails to show the existence of an intimate acquaintanceship. The question as to whether a witness has been shown to be an intimate acquaintance of one whose mental soundness is challenged is addressed to the sound discretion of the trial judge. Except for an abuse of that discretion, a reviewing court may not interfere with the determination of the trial court in that regard. In the syllabus to the case of *People* v. *Manoogian*, *supra*, it is said:

"The question whether a witness is such an 'intimate acquaintance' as to be allowed to give his opinion on the general question of sanity or insanity is from its nature peculiarly addressed to the discretion of the trial court, and the appellate court will not interpose, unless there is a clear abuse of discretion."

The challenged evidence is therefore competent, and the court did not err in receiving it subject to limitation, or otherwise.

The court did not err in receiving in evidence defendants' exhibits A, C, D, E or F, which were statements of Mrs. Jorgensen's bank accounts, including items of deposits therein and withdrawals therefrom, except exhibits E and F, which were promissory notes executed to their mother by the plaintiff C. H. Jorgensen and his deceased brother Ed P. Jorgensen, for previous loans secured by them. Both the bank accounts and the notes were competent as affecting the issue of alleged undue influence. They tended to show that Mrs. Jorgensen had always been on good terms with all of her children and that she had assisted each of them financially, without discrimination, in times of need.

The testimony of Mr. Walter Moline, the assistant manager of the Bank of America, where Mrs. Jorgensen had kept her accounts for several years, was also competent. He had known and dealt with the deceased for many years and was familiar with her signature. He identified and explained the various bank accounts of the deceased and testified to the genuineness of her signature on the joint tenancy agreement and upon other documents. We do not perceive that his testimony tended to vary the terms of any of those written documents. It was merely explanatory of the instruments and the results thereof.

For the reasons heretofore stated, the motion for a new trial was properly denied.

The judgment is affirmed.

Adams, P. J., and Schottky, J. pro tem., concurred.