[Civ. No. 7062.   Third Dist.   Feb. 28, 1945.]

JOHANNA OLSON OSTERBERG, Appellant, v. WILLIAM OSTERBERG, Respondent.

Edward R. Solinsky and Philip C. Boardman for Appellant.

Cleary & Zeff and Sherrill Halbert for Respondent.

THOMPSON, J.—The plaintiff has appealed from a judgment rendered in a suit against the son of her deceased husband, to cancel a deed executed by the father prior to his marriage with plaintiff on the grounds of lack of consideration and undue influence. Plaintiff also asked the court to quiet title in her to a one-third interest in the ranch, and also asked for an accounting of the proceeds therefrom.

The defendant is the oldest son of John Osterberg by a former wife who died in 1908. There were six children as issue of John's first marriage. The father bought a 17-acre ranch near Modesto upon which his family resided. The farm was mortgaged, and the father maintained his family with great difficulty. The defendant was 17 years of age when his mother died. He never married. When the mother died, the father told the defendant that if he would "stay with him" and help maintain and educate his younger brothers and sisters he would convey the home ranch to him. Pursuant to that agreement the defendant left school and worked for five years for wages on adjoining ranches, turning all of his wages over to his father for the maintenance of the family. He also assisted his father in the performance of farm work and spent his evenings with him. In 1913 the father acquired a well-drilling outfit and the defendant assisted him for five years in carrying on that enterprise. In 1918 the defendant joined the Army, serving for four months during the first World War, until the Armistice. He then returned to his home and continued to assist in the farm work and contributed to the maintenance of his father and the family until the death of his father in March, 1942.

In 1920 their house was destroyed by fire. The defendant procured an old barn which he moved to the home property and he improved it for the use of the family as a temporary home. He later borrowed $2,500 which he added to a similar loan obtained by his father, with which they constructed a new home. The defendant paid his said loan in regular installments. That debt was not fully satisfied until 1932. The defendant paid the taxes on the ranch. The father and son engaged in an oil exploring enterprise on the property at a loss of over $6,000. In 1920 the defendant purchased and planted five acres of peaches on the ranch at his own expense. Later he planted several other acres of fruit trees on the property, at his own cost. After 1919 the son practically assumed the entire charge of the ranch. There is evidence that in the 10 years following the last mentioned date William contributed to the maintenance of the family. He purchased machinery and operated the ranch, expending therefor several thousand dollars which he either paid or for which he assumed the obligation.

In 1919, after William returned from the war, his father told him he was "then ready to turn the place over" to him. William told him "there was no hurry about that; just to leave it the way it was." He said that he did not ask him for the deed. The first time William learned that his father had executed the deed was in June, 1932, when his father returned from town and told him "Bill, the place is now yours." His sister Elsie, who was then employed in a real estate office in Modesto, testified that she drew the deed at the request of her father. Bill was not present when the deed was executed. The children knew that was in accordance with their father's agreement and purpose. A clause reserving the life estate in the grantor was later inserted at his request. Elsie placed the deed in a safe deposit box and later left it with the Modesto Title Company, at the request of her father. In July, 1937, Elsie's father asked her to have the deed recorded. She instructed the title company to do so, and it was recorded at the request of the company July 20, 1937. The deed was manually delivered to William by Elsie at the direction of the father and in his presence in July, 1937.

The plaintiff was related to defendant's mother. She had been previously married and had children by her first husband. He died. She was left without resources or a home.

The plaintiff became engaged to marry John Osterberg. Before their marriage, which occurred March 22, 1933, Mrs. Esther Smith, a daughter of the grantor, told the plaintiff in the presence of plaintiff's daughter, Mrs. Sears, about the conveyance of the property to her brother William. Esther testified that the plaintiff told her regarding that deed that she had been working hard in San Francisco, and ''she couldn't do it any more and she had to give it up, and she was glad to come out there and live with my Dad.'' In reply to the question propounded, ''And that she didn't want anything after [his death]?'' the plaintiff replied ''Absolutely.'' Q. Just so she had a living? A. Just so she had a home there. . . . Q. Just a home for the time that your father was alive? A. Yes.'' The plaintiff admitted that John Osterberg told her he was unable to care for the ranch and that he had ''turned it over to Bill,'' subject to the reservation of a life estate in himself. Regarding the transfer of title to the son, the following colloquy occurred during the examination of the plaintiff:

''The Court: He couldn't manage it so he turned it over and took a life estate? A. Yes. The Court: And not for the purpose of cheating you? A. No. He said I was going to be protected. . . . He also told me when he was in the hospital *that there was money left for me, that I was supposed to have*. . . . He said, 'You don't need to worry about it, there is money there for you. He [the defendant] has money for you, and there is some money'.''

The plaintiff never at any time asked her husband to have the deed changed or cancelled. She evidently expected he would leave her some money and not an interest in the ranch. July 20, 1937, four years and eight months before the death of her husband, the plaintiff abandoned his home and went to live with her married daughter in San Francisco. She testified in that regard, ''I couldn't be there any longer, I couldn't do the work and he knew all about it; it was too much for me to do.'' The spouses did thereafter associate together, but she never returned to his home at Modesto.

Within two and a half months after the death of John Osterberg this suit was commenced. The defendant answered the complaint, denying the material allegations thereof, and filed a cross-complaint alleging that the ranch was conveyed to him by his father for a good and sufficient consideration, free from fraud or undue influence, and that he was the owner

thereof, praying that title thereto be quieted in him. The court adopted findings favorable to the defendant and cross-complainant in every essential respect. A judgment was accordingly rendered to the effect that plaintiff was entitled to nothing by her complaint, and title to the ranch was quieted in the defendant. From that judgment this appeal was perfected.

The appellant seeks to reverse the judgment on the grounds that it is not supported by the evidence, and that the deed to the home property was procured by the defendant without consideration and by means of coercion, fraud and undue influence.

While there is some conflict of evidence, and we have not attempted to recite the testimony favorable to the appellant, we are of the opinion there is adequate proof to support the findings and the judgment. The little 17-acre Modesto ranch was bought by the defendant's father for $45 per acre. When the dwelling house was destroyed by fire in 1920 it was rebuilt at a cost of $5,000, at least one-half of which sum was contributed by the defendant. It was a modest, inexpensive home. The property was worth less than $10,000. In 1908, after the death of defendant's mother, and 25 years before plaintiff came to live in the family, his father agreed to convey the property to him in consideration of his aid and assistance in maintaining the home and farm and in helping to educate his brothers and sisters. He faithfully did so until the time of the death of his father in March, 1942. He worked for adjacent farmers for wages, all of which he turned over to his father. He worked on the farm and planted and cared for some 10 acres of fruit trees at his own expense. He purchased machinery and helped to rebuild the dwelling house. He contributed to his father's oil drilling enterprise at a cost in excess of $6,000. He furnished his father with funds during that entire period of time amounting to several thousand dollars. He gave up the completion of his education to thus assist his father. It may not be said there was not adequate consideration for the deed.

The mere proof of the existence of a confidential relationship between a grantor and a grantee of land does not raise the presumption of fraud or undue influence. (*Best* v. *Paul*, 101 Cal.App. 497 [281 P. 1089].) Nor is a conveyance deemed to be void merely because such confidential relation-

ship existed. (*Jorgensen* v. *Dahlstrom,* 53 Cal.App.2d 322, 333 [127 P.2d 551].) It is only when it also appears that the grantee exercised activity in procuring the deed, or that it was conveyed without consideration, that the burden is placed on the grantee to show that the deed was not obtained by fraud, or undue influence. (*Best* v. *Paul, supra; Jorgensen* v. *Dahlstrom, supra; Hatch* v. *Penzner,* 44 Cal.App.2d 874, 879 [113 P.2d 295] ; 39 Am.Jur. § 99, p. 744, and § 100, p. 745.)

In the present case there is sufficient evidence to support the findings of the court that the deed was made and the title to the land conveyed, subject to a reservation of a life estate in the grantor, for a valuable and adequate consideration, free from fraud or undue influence or even activity to procure the deed, on the part of the grantee. There is no evidence that the son importuned or coerced or even asked his father at any time to convey the property to him. On the contrary, there is evidence that when William returned from the war in 1919, and his father told him he was then ready to deed him the ranch, William replied that there was no necessity to hurry about that. He requested his father to "leave it the way it was." William testified that he never asked his father to make that deed; that the first time he learned of the execution of the deed was when his father told him in June, 1932, that he had executed the deed. William had nothing to do with procuring the execution of the deed. He was not present when it was made or when it was placed in the custody of the Modesto Title Company. There is ample evidence that the grantee was not active in procuring the deed.

There is no merit in the contention that the deed was made without consideration since the agreement to convey the title was made during William's minority and that his father was entitled to his earnings, under section 197 of the Civil Code, until he reached the age of his majority. The circumstances of this case indicate that the father waived his legal right to his son's wages during his minority. Moreover, the deed was not executed until long after William became of age. The original voluntary agreement of the grantor was made in consideration of *continuing services* and of contributions of funds by his son. The greatest proportion of services performed and funds supplied by the son was contributed during a period of 30 years after he became of age. Those contributions continued for 10 years after the deed was exe-

cuted in June, 1932, to the time of the grantor's death, with full knowledge of that conveyance on the part of the plaintiff. There was adequate consideration for the deed, independent of the wages contributed before William reached the age of his majority.

The appellant contends that the concealing by the grantee and his brothers and sisters of the fact of the execution of the deed to the defendant furnishes evidence of fraud. The deed was acknowledged June 28, 1932. The children had knowledge of that fact. They also knew their father intended to marry the plaintiff. The marriage did not occur until March 22, 1933. Regarding plaintiff's previous knowledge of that deed, there is a conflict of evidence. But there is positive testimony on the part of Mrs. Esther Smith, a sister of the defendant, that the children had talked of the expected marriage and thought it would be fair to tell the plaintiff about the previous conveyance of the property. Mrs. Smith said that two or three months before the wedding she told the plaintiff about her father's conveyance of the home to William, and his reasons therefor, saying to her ''I want you to know that before you marry.'' At the request of the plaintiff, Mrs. Smith told Mrs. Sears, the daughter of plaintiff, about the conveyance, saying, ''I felt it only fair that she should know.'' In response to that information, the plaintiff replied that she didn't care about the conveyance of the property; that she had been working in an apartment house in San Francisco too hard; that she couldn't stand such hard work, and ''she would be glad to live there with that understanding.'' Mrs. Smith testified that plaintiff said, ''I am not asking for anything but just to stay here. . . . To come out there and live with my Dad.'' That evidence refutes the theory of fraud or deceit on the part of the children.

The deed was not rendered invalid by the addition of the clause inserted at the request of the grantor reserving a life interest in the property, after he had signed the deed and before it was delivered or recorded. The deed was prepared by Elsie Carroll, the daughter of the grantor, at his request. It was dated June 10, 1932, and signed by him. It was duly acknowledged by him June 28, 1932, and was left in the custody of Elsie. It was not recorded or delivered to the grantee until July 20, 1937. In the meantime, the clause reserving the life estate in the grantor was inserted in the deed at his

request. In California the acknowledgment of a deed is not essential to its validity. The acknowledgment of a deed is merely evidentiary in character and is required only to entitle it to be recorded so as to render it competent evidence of the conveyance without further proof. (*Williston* v. *City of Yuba City,* 1 Cal.App.2d 166, 171 [36 P.2d 445]; *Kimbro* v. *Kimbro,* 199 Cal. 344 [249 P. 180]; *Dutton* v. *Locke-Paddon,* 37 Cal. App. 693 [174 P. 674]; 9 Cal.Jur. § 18, p. 113.)

■ The alteration of the deed by inserting therein before it was recorded or delivered the clause reserving to the grantor a life estate, at his request, did not invalidate the instrument as it was originally executed. (2 Am.Jur. § 23, p. 613; 3 C.J.S. § 56, p. 972 and § 58, p. 974; 67 A.L.R. 364, note; *Dutton* v. *Locke-Paddon, supra.*) In 2 American Jurisprudence at page 613 it is said in that regard:

''The rule seems to be generally established that, in the absence of a statute making acknowledgment or attestation of an instrument, such as a deed or mortgage, a prerequisite to the validity thereof, an alteration made in such an instrument, by consent of the parties, after execution and acknowledgment or attestation, and either before or after delivery, or even after recording, does not, as between the parties thereto, render invalid the instrument as originally executed.''

In 3 Corpus Juris Secundum at page 974, *supra,* it is likewise said:

''The parties to an instrument under seal may by consent make a change in it before complete execution, and, since a complete execution of a deed is consummated by final delivery, the mere signing and sealing of an instrument does not preclude changes by consent before delivery.''

In the present case there is no doubt the alteration of the deed was made at the request of the grantor, after which he directed it to be recorded and delivered. It was delivered to the grantee in the presence of the grantor, as altered and recorded. It was therefore not invalid on account of the alteration or otherwise. It was accepted by the grantee, subject to the life estate retained by his father. ■ In addition to the positive evidence that the deed was manually delivered to William at the request and in the presence of his father, the recording of the instrument at the request of the grantor was prima facie proof of delivery with the intention on the part of the grantor to presently convey title to the property subject to his reserved life estate. (*Hitch* v.

*Hitch,* 24 Cal.App.2d 291, 293 [74 P.2d 1098]; 28 C.J.S. § 44, p. 245, and § 187, p. 598.) In the authority last cited it is said at page 600:

''The delivery of a deed for record, by one who has executed and acknowledged it, with unqualified instructions to record it, will raise the presumption in the absence of any rebutting circumstances that the grantor intends to part with his title. . . .

''The presumption of delivery arising from recording is rebuttable, especially where the deed is recorded by or under the direction of the grantor; *and the burden of overcoming the presumption rests on the person who denies delivery.''* (Italics added.)

For the rule regarding the burden of proof, see, also, the case of *Azevedo* v. *Azevedo,* 1 Cal.App.2d 504, 507 [36 P.2d 1078].

The plaintiff may not complain of the alteration of the deed. It was favorable to the grantor. She was not an innocent purchaser for a valuable consideration. She had full knowledge of the deed and conveyance before she married the grantor. Moreover, this suit was not filed for nearly five years after the deed with its alteration was duly recorded. After one year had elapsed from the time of the recording of the deed, the plaintiff was charged with notice of the contents and of any defect, omission or informality which the deed may have contained. Section 1207 of the Civil Code provides in part:

''Any instrument affecting the title to real property, one year after the same has been copied into the proper book of record, kept in the office of any county recorder, imparts notice of its contents to subsequent purchasers and encumbrancers, notwithstanding any defect, omission, or informality in the execution of the instrument, or in the certificate of acknowledgment thereof, or the absence of any such certificate; . . .''

We find nothing in the authorities cited by the appellant in conflict with what we have previously said regarding the validity of the deed, its alteration, the adequate consideration therefor, or its delivery to and acceptance by the grantee.

The case of *Trout* v. *Taylor,* 220 Cal. 652 [32 P.2d 968], relied upon by the appellant, is not in point. In that case, the plaintiff, an elderly lady without education or business experience, was induced to agree to exchange her real property for shares of stock in Running Springs Park, Inc. She

signed, acknowledged and delivered to the agent her deed without naming any grantee therein. No authority was given by the grantor for anyone to enter the name of a grantee in the blank space left in the deed which she had executed and delivered. The court said in that regard: ''The record shows no agency, and no authority, express or implied given by plaintiff to defendant R. H. Taylor.'' The court properly held in that case that the deed was void for the reason that it contained the name of no grantee, and the grantor did not authorize the insertion therein of the name of a grantee. █ The authorities are uniform to the effect that a deed which contains no name of the grantee and no sufficient identification of the party to whom the property is to be conveyed, is a nullity and void. (*Tumansky* v. *Woodruff*, 14 Cal.App.2d 279, 283 [57 P.2d 1372] ; 9 Cal.Jur. § 28, p. 125 ; 32 A.L.R. 737, note.) The form of a grant deed, prescribed by section 1092 of the Civil Code, requires that instrument to designate the grantee by name.

█ In the present case the deed contained no such omission or infirmity, and it was not void on that account. In this case there was definite authority from the grantor to insert the clause reserving in him the life estate. If it was not actually done in his presence, he requested it to be done and he ratified that change when, with full knowledge thereof, he directed the recording of the deed and subsequently procured it to be delivered to the grantee in his presence.

The case of *Videau* v. *Griffin*, 21 Cal. 389, upon which the appellant also relies, is not in point. In that case the court properly held that a deed which purported to have been signed and executed by a person other than the owner of the land, was not entitled to be admitted in evidence as the deed of the grantor, because of the lack of written authorization or power of attorney for an agent to sign and execute the deed. The land belonged to Henry Sparks. The deed was signed and acknowledged by John A. Clark, ''as the attorney'' or agent of the grantor. No power of attorney or written authority for Clark to sign or execute the deed was shown. The court properly held that it was not competent evidence of the conveyance of title to the real property. The instrument was held to be a nullity and void. Section 1091 of the Civil Code provides that:

''An estate in real property, other than an estate at will

or for a term not exceeding one year, *can be transferred only by operation of law, or by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing.''* (Italics added.)

In the present case the agent of the grantor did not sign or acknowledge or execute the deed. The grantor himself signed and acknowledged it. He instructed his daughter to insert the clause reserving the life estate. If that was not actually done in the presence of the grantor, it was the duty of the plaintiff to prove that fact. The deed was valid on its face. The plaintiff failed to furnish evidence of the absence of the grantor. He instructed his daughter to record the deed after the change had been made, and he was present when it was actually delivered to the grantee. Certainly that was sufficient ratification and approval of the change in the deed which was made at his special instance and request, to render it valid as against anyone except a purchaser in good faith for a valuable consideration. We are of the opinion the deed was not void, under the circumstances of this case, on that account, or at all.

For the foregoing reasons the judgment is affirmed.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied March 27, 1945, and appellant's petition for a hearing by the Supreme Court was denied April 26, 1945.